***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Defendant was an approved self-insured with Crawford Company acting as its third party administrator at all relevant times herein.
4. Plaintiff's average weekly wage was $408.61, which yields a compensation rate of $272.43.
5. Plaintiff sustained a compensable injury by accident on or about October 19, 1999.
6. Plaintiff's medical records were stipulated into evidence by the parties.
7. The issues to be determined by the Commission are as follows:
 a) Whether plaintiff's injury of December 31, 1999 was an intervening act which would preclude plaintiff from recovering any further disability benefits;
 b) Whether plaintiff is entitled to receive any additional benefits under the Workers' Compensation Act; and
 c) Whether sanctions should be imposed against defendant for the misuse of the Industrial Commission Forms.
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer for approximately 7 years as a climber prior to October 19, 1999. Plaintiff was required to trim, cut and remove trees as a part of his job.
2. On October 19, 1999, plaintiff, while working at a job site in Florida, was shocked by the power line he was clearing although he had been assured the line was not electrified. Plaintiff had witnessed the electrocution of a friend several years before this incident.
3. Plaintiff was taken to and treated at Palm Beach Gardens Medical Center Emergency Department following his injury by accident. Plaintiff's condition was diagnosed as electrical burn of the left forearm and he was excused from work for the next two days. After being released from the hospital, plaintiff returned home from Florida with his crew.
4. After returning to work for about a week, plaintiff requested that defendant-employer allow him to see a doctor for follow up care, but this request was denied. Thereafter, plaintiff went to his family physician, Dr. C. P. Blomeley of Columbus Medical Associates, on November 4, 1999. Plaintiff's complaints included blurred vision, tingling, twitching and anxiety. Dr. Blomeley felt that plaintiff had more problems with anxiety than any physical problems as a result of his electrical shock. Dr. Blomeley took plaintiff out of work until he could be seen by a neurologist.
5. Plaintiff was treated by Dr. Steven W. Dilbert, a neurologist, at Neuroscience Spine Center of the Carolinas on November 15, 1999. Dr. Dilbert diagnosed plaintiff's condition as post-electrical shock with symptoms of depression and anxiety. Dr. Dilbert took plaintiff out of work, ordered a neuropsychological evaluation and started plaintiff on the antidepressant Zoloft and Fiorcet for headaches.
6. Plaintiff was seen and treated by Dr. Alexander A. Manning, a clinical neuropsychologist on December 10, 1999. Dr. Manning found that plaintiff was suffering an adverse emotional/psychological reaction to the accident, and diagnosed major depressive episode. Dr. Manning recommended anti-depressant medication and psychological counseling to help plaintiff deal with stress, to alleviate his depression, and to facilitate his return to work.
7. On December 31, 1999, plaintiff was involved in an altercation at his home. Plaintiff had had a prior dispute with a neighbor. While plaintiff was sitting in his yard drinking, plaintiff's neighbor and some of his neighbor's co-workers came into plaintiff's yard and assaulted plaintiff. Plaintiff was struck twice before he fought back. Plaintiff then chased one of the assailants with a knife. Another assailant got into a truck to pursue plaintiff, ran over plaintiff, then backed over him again, shattering his pelvis and sacrum and causing other internal injuries. There was no evidence plaintiff did anything to cause this assault. Plaintiff did become an aggressor at the point that he chased the assailant with a knife. Plaintiff plead guilty to assault with a deadly weapon based on his threatening the assailant with a knife. However, plaintiff's being run over by the truck was not the result of any intentional act on plaintiff's part. Plaintiff tried to avoid the truck by running into the yard, but the driver of the truck drove out of the driveway and into the yard, running over plaintiff twice.
8. In March 2000 defendant sent plaintiff to see Dr. Richard Miller-Kallenbach, a psychiatrist. Dr. Miller-Kallenbach diagnosed plaintiff's condition as post-traumatic stress disorder with concurrent depression and anxiety. During his deposition, in explaining the cause of plaintiff's conditions, Dr. Miller-Kallenbauh said the following:
 I have an opinion as to the major cause of the post-traumatic stress disorder, and I believe that the depression and the anxiety were largely consequences of the post-traumatic stress, and I believe that his witnessing the electrocution of a co-worker and his being shocked by the high voltage line and knocked out of the tree were very, very significant events in his life that contributed to his post-traumatic stress.
Dr. Miller-Kallenbach further stated that plaintiff's being run over by the truck also contributed to his condition but it was not the major cause of his condition.
9. Dr. Miller-Kallenbach was of the opinion that plaintiff was not able to work at the time he first saw him, nor was plaintiff able to work at any position at the time of Dr. Miller-Kallenbach's deposition. Dr. Miller-Kallenbach indicated plaintiff is in need of ongoing treatment for his condition, which may be needed for years or the remainder of plaintiff's life.
10. Plaintiff was disabled and unable to work as a result of his post-traumatic stress disorder prior to the incident of December 31, 1999. Plaintiff's disability from his job-related injuries continued through the date of the hearing before the Deputy Commissioner and thereafter.
11. Defendant admitted that plaintiff suffered a compensable work injury on October 19, 1999. Defendant also was aware that plaintiff had been taken out of work by all of his treating physicians. Nevertheless, after learning of the incident on December 31, 1999, defendant paid no disability benefits to plaintiff until January 5, 2000.
12. On January 5, 2000, defendant issued both a Form 61 Denial of Workers' Compensation Claim and a Form 63 Notice to Employee of Payment of Compensation Without Prejudice which were subsequently filed with the Commission. Pursuant to the Form 63, defendant paid plaintiff disability compensation for the period of November 5, 1999 through December 31, 1999. Pursuant to the Form 61, defendant denied plaintiff's claim stating "Employer denies disability related to accident, particularly after 12/31/99, when employee, previously able to ambulate, was inflicted with severe injuries confining him to hospital bed, when struck by a truck in an incident in no way related to the 10/19/99 alleged injury. On after 12/31/99, Employee was removed from job market."
13. Cynthia Carlton, the adjuster with Crawford Company that had been handling this claim, admitted plaintiff had not been returned to work by any doctor since his work injury of October 19, 1999. Ms. Carlton also had no explanation why the Forms 61 and 63 had been utilized. Under the unquestionably compensable circumstances in which plaintiff was injured, defendant should have paid plaintiff for his compensable injuries pursuant to either a Form 21 Agreement for Compensation or a Form 60 Employer's Admission of Employee's Right to Compensation. If defendant had used the proper form, defendant would have been required to obtain Commission approval prior to terminating plaintiff's benefits for his compensable injuries. Further, the filing of the proper form with the Commission would have prevented defendant from unilaterally terminating plaintiff's benefits.
14. Defendant has not defended this action without reasonable grounds.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer on October 19, 1999. As a direct result of plaintiff's admittedly compensable injury by accident, he also suffers post-traumatic stress disorder and anxiety. N.C. Gen. Stat. § 97-2(6).
2. "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." Roper v. J.P. Stevens Co., 65 N.C. App. 69, 73,308 S.E.2d 485, 488 (1983). Unless the subsequent aggravation is the result of an independent intervening cause attributable to the claimant's intentional conduct, the subsequent aggravation of the primary injury is also compensable. Horne v. Universal Leaf Tobacco Processors,119 N.C. App. 682, 459 S.E.2d 797 (1995).
3. The incident of December 31, 1999 was not an independent intervening cause of disability in that plaintiff was totally disabled at the time of the incident and continued to be totally disabled at the time of the hearing before the Deputy Commissioner from his post-traumatic stress disorder and anxiety which were directly caused by his admittedly compensable injury by accident of October 19, 1999. The incident on December 31, 1999 also was not the result of plaintiff's intentional conduct. Plaintiff was not the aggressor initially in the December 31, 1999 incident. Although plaintiff became an aggressor when he was brandishing the knife, there is no evidence in the record that he was run over twice by the truck because he was chasing the man and threatening him with the knife. Plaintiff sought to avoid being run over by the truck by running into the yard. Therefore, the incident of December 31, 1999 was not the result of an independent, intervening cause attributable to plaintiff's own intentional conduct.
4. As the result of the compensable injury by accident and resulting post-traumatic stress disorder, plaintiff was disabled from any work and is entitled to receive total disability compensation at the rate of $272.43 per week beginning October 19, 1999 and continuing until plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29. Defendant is entitled to a deduction for wages paid to plaintiff during the week he worked after the injury by accident.
5. Plaintiff is entitled to payment of the medical expenses incurred for the treatment of the injuries sustained and any further treatment that tends to effect a cure, give relief and/or lessen plaintiff's period of disability. The approved medical treatment includes the care given to plaintiff by Dr. Blomeley and by the physicians to whom Dr. Blomeley referred plaintiff. N.C. Gen. Stat. § 97-25.
6. A Form 61 Denial of Workers' Compensation Claim is used in cases in which the employer denies the employee's right to compensation. N.C. Gen. Stat. § 97-18(c). A Form 63 Notice to Employee of Payment of Compensation Without Prejudice is appropriate in cases in which the employer or insurer is uncertain on reasonable grounds whether the claim is compensable or whether the carrier has liability for the claim. There is no question in the instant case that plaintiff's claim was a compensable one and that defendant was liable for the resulting disability. N.C. Gen. Stat. §§ 97-2(6), -18(c),-(d).
7. Defendant should have filed a Form 21 Agreement for Compensation or a Form 60 Admission of Employee's Right to Compensation, but instead defendant filed both a Form 61 and a Form 63. Defendant's decision to deny plaintiff's claim based on its belief that the assault on December 31, 1999 was an independent, intervening act and therefore defendant did not have to continue payment of compensation was not permissible. Plaintiff should have been allowed the opportunity to be heard on the termination of his benefits pursuant to the Form 24 procedure adopted by the Commission. N.C. Gen. Stat. §§ 97-18(b), (d) and 97-18.1; Shahv. Howard Johnson, 140 N.C. App. 58, 535 S.E.2d 577 (2000), disc. rev.denied, 353 N.C. 381, 547 S.E.2d 17 (2001).
8. Defendant did not defend this claim without reasonable ground and therefore plaintiff is not entitled to fees and costs pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved below and a deduction for wages paid for one week, defendant shall pay to plaintiff compensation at the rate of $272.43 per week beginning October 19, 1999 and continuing thereafter until plaintiff has returned to work earning the same or greater wages as he was earning at the time of his injury by accident or further Order of the Commission. All sums that have accrued shall be paid in a lump sum.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. The approved medical expenses include the treatment plaintiff has received for his post-traumatic stress disorder with the treatment continuing into the future as long as plaintiff's treating physicians determine necessary.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded plaintiff is approved for plaintiff's counsel. The attorney's fee shall be paid directly to plaintiff's attorney.
4. Defendant shall pay the Commission $2,500.00 as sanctions for its failure to file the appropriate Form 21 or Form 60 and for subsequently failing to follow statutory procedures for termination of benefits.
5. Defendant shall pay the costs of this action.
This the ___ day of May 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/__________________________ RENE C. RIGGSBEE COMMISSIONER
 S/__________________________ CHRISTOPHER SCOTT COMMISSIONER