***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments on appeal. The Full Commission AFFIRMS with slight modifications the decision of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and plaintiff-employee.
3. State Farm Fire Casualty Company was at all times relevant to this claim, the duly qualified insurer for the defendant-employer.
4. The date of plaintiff's injury is March 29, 2002.
5. The plaintiff's average wage weekly wage is to be determined from a Form 22 Wage Chart.
6. The following records were stipulated into evidence:
Stipulated Exhibit 1:
(a) Transcript of recorded statement of Victor Forrester
(b) Transcript of recorded statement of Plaintiff
(c) Employment Security Commission records
(d) Plaintiff's verified Answers to Defendants Interrogatories
(e) Plaintiff's Employment Application
Stipulated Exhibit 2:
(a) Industrial Commission Forms 18, 19, 22, 33, 33R, and 61.
(b) Defendant's Answers to Plaintiff's First Set of Interrogatories 
Request for production of document
Stipulated Exhibit 3, Medical Records from the following providers:
(a) Whiteville Urgent Care
(b) Columbus County Hospital
(c) Health Partners
(d) Dr. Mark Rodger
(e) Dr. John Liguori
Stipulated Exhibit 4, the Form 22.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 36 years of age. He completed the 11th grade, and has held various jobs since then. He was employed by defendant JE Dinkins beginning in February 2002, first as a warehouse worker and then as a Warehouse Manager.
2. On March 29, 2002, the plaintiff sustained an admittedly compensable injury by accident to his back when a curio cabinet fell hitting him on his back and left shoulder.
3. Following his injury plaintiff was told by defendant-employer to go to Whiteville Urgent Care, where Dr. James Pridgen saw him. At the time he saw Dr. Pridgen at 2:20 p.m., plaintiff was complaining of pain in the left side of his neck, his left upper trapezius and left lower back. Dr. Pridgen treated him with Naprosyn and Skelaxin and some heat therapy. Dr. Pridgen released plaintiff to return to work on that same day with the restrictions of no lifting, no intermittent stooping, bending, crouching or climbing, and told plaintiff to return for a follow-up appointment on April 1, 2002.
4. When plaintiff returned to defendant-employer on March 29, 2002, the owner of the store, Joey Dinkins told him to go home, and to take the next day, Saturday March 30, 2002 off, and not to return to work until his next regularly scheduled work day, Tuesday April 2, 2002.
5. Plaintiff returned to Dr. Pridgen on March 30, 2002, for a re-check, although he was not scheduled to return until April 1, 2002. It appears the notes were not completed for that day (a Saturday), and Dr. Pridgen was unable to testify why plaintiff was seen at that time, what his complaints were, or if he was examined.
6. On April 2, 2002, Plaintiff returned to work, but he stayed only for 15-20 minutes before he told co-employee Dan Knight that he was hurting and that he was leaving to go to the doctor. Plaintiff left before the owner, Joey Dinkins, or store manager, Victor Forrester arrived. Because he left that morning, Dan Knight thought that he was going straight to the doctor, when in fact Plaintiff did not report to the doctor's office until around 2:25 p.m.
7. When plaintiff returned to see Dr. Pridgen on April 2, 2002, he made complaints of continued pain. Upon examination, Dr. Pridgen found the left shoulder was non-tender. Plaintiff complained of some pain on palpation of the lower cervical and mid-thoracic spine.
8. Per Dr. Pridgen's testimony, plaintiff made no mention of increased levels of pain at the April 2 appointment. Dr. Pridgen released him to return to work on April 3, 2002 with the same restrictions. Considering this evidence, plaintiff's claim that he had to leave work at 9:15 a.m. because of pain in his back is not deemed to be credible.
9. On April 3, 2002, plaintiff failed to return to work. Plaintiff claimed that he was out of work because he had a bad reaction to his medication, and that he informed his physician, Dr. Pridgen of the reaction and that the doctor changed his medication at that time. However, Dr. Pridgen testified that plaintiff never mentioned having an adverse reaction to his medication, nor was his medication changed at his next visit of April 9. When the employer tried to contact plaintiff on April 3 at the phone number they had for him, they got no response.
10. Plaintiff testified that when he contacted the employer on April 4, 2002 about returning to work he was informed by the store manager Victor Forrester that Joseph Dinkins had told Forrester to tell the plaintiff that he was fired. However, both Mr. Dinkins and Mr. Forrester testified that because of plaintiff's failure to come into work as scheduled, plaintiff was merely told that he needed to contact Mr. Dinkins before returning to work. Mr. Dinkins testified that he needed to know the plaintiff's situation before putting him back to work.
11. Victor Forrester was adamant in his testimony that he did not tell plaintiff that he had been fired. In his testimony and his prior recorded statement, Mr. Forrester said that on the day in question he and plaintiff had discussed the matter at length, with plaintiff specifically asking if Mr. Dinkins was trying to fire him, and Mr. Forrester stating that he was not.
12. Plaintiff made no effort to contact defendant-employer until April 10, 2002, when he called and spoke with another employee because Mr. Dinkins was on another phone line. The message was relayed to Mr. Dinkins that plaintiff was on the phone. Mr. Dinkins then relayed to the plaintiff to be at work at 10:00 a.m. on April 11, 2002 in order to talk with Mr. Dinkins regarding his job. The message that was then given to Mr. Dinkins was that the next time that Mr. Dinkins would hear from plaintiff it would be from his attorney.
13. On April 16, 2002, plaintiff came to the employer's business to pick up his payroll check. Mr. Dinkins took plaintiff into his office and told him that he had not been fired. At that time, Mr. Dinkins offered plaintiff a job working in the office taking payments from customers and setting up deliveries beginning on April 17, 2002. Mr. Dinkins testified that plaintiff accepted, and he then gave plaintiff a polo shirt with the company name on it to wear in his new job. This testimony was corroborated by Dan Knight, who overheard the conversation.
14. The testimony from Mr. Dinkins showed that the job offered to plaintiff consisted of paperwork and answering telephones, duties that were regularly performed by full-time employees of defendant-employer. Plaintiff would be allowed to sit or stand as needed. Although plaintiff testified otherwise, this position was well within plaintiff's work restrictions.
15. Plaintiff did not come to work or call into work on April 17, 2002. According to the testimony of Mr. Dinkins and Mr. Knight, on April 18, 2002 plaintiff came into work and said that he was quitting because he couldn't work in the environment at the employer's business or with the people there. Plaintiff admitted upon cross-examination that he told Mr. Dinkins that Badcock Furniture was a "bad place to work."
16. On April 21, 2002, plaintiff returned to Dr. Pridgen with continued complaints of neck and back pain and stiffness. Dr. Pridgen continued to diagnose plaintiff with cervical, thoracic, and lumbar pain, although he testified that plaintiff had no objective symptoms. Dr. Pridgen released the plaintiff to return to his office as needed. Dr. Pridgen testified that because plaintiff was not given any restrictions, that he could work as tolerated and that he could have tried to return to his regular job. In his opinion, plaintiff had no permanent impairment as a result of his injury by accident. Dr. Pridgen testified that he would have continued to treat plaintiff as needed, even if treatment was not authorized by workers compensation, and that he would not have told plaintiff that he would not see him unless the plaintiff paid for the treatment himself.
17. As a result of his April 12, 2002 appointment with Dr. Pridgen, plaintiff was referred to physical therapy. However, plaintiff did not begin physical therapy until June 6, 2002, and then attended only two more visits on June 11 and 13. At his last visit on June 13, 2002, it was noted that plaintiff claimed to feel much better than at the initial evaluation, and the therapists indicated that they would continue to see him and add additional exercises. Plaintiff chose not to return for any further visits.
18. Although the employer and carrier had accepted the plaintiff's accident as compensable, plaintiff chose not to seek additional medical treatment for his back until 2003. Ms. Sandra Schumann, claims representative with the carrier testified and set forth in a letter to plaintiff's attorney, that additional treatment, including the physical therapy, had been authorized.
19. Plaintiff's testified at hearing that between April of 2002 and January of 2003 plaintiff was regularly taking prescription medication for back pain which he had received from Dr. Pridgen. Dr. Pridgen testified that the prescriptions he wrote for plaintiff were not available for refills. As set forth below, when plaintiff saw FNP Hopkins in October 2002 he stated that he was not taking any medications.
20. On October 6, 2002, plaintiff returned to Whiteville Urgent Care stating that he wanted to speak with Dr. Pridgen regarding his back. Plaintiff was told that the doctor would be in later and that he could come back. Plaintiff left but did not come back.
21. On October 16, 2002 plaintiff was seen by Teresa Hopkins, a Family Nurse Practitioner, for a Commercial Drivers' License evaluation. Plaintiff mentioned that he'd had a back injury, but did not make any complaints of back pain at that time and reported that he was taking no medications (which is contrary to his hearing testimony). He gave no reasons he could not work as a truck driver. Ms. Hopkins performed a physical examination, which showed no limitations of motion or tenderness in the back. Ms. Hopkins certified that when she saw him in October 2002, plaintiff was able to perform the duties of a truck driver.
22. Plaintiff's physical examination by Ms. Hopkins in October 2002 contradicts his testimony. She noted that he showed no limitations of motion or tenderness in the back, and made no complaints regarding back pain. Plaintiff told his examiner that he had tried physical therapy but that he had experienced no significant relief.
23. Plaintiff returned to Ms. Hopkins on January 7, 2003 and on April 2, 2003, both times complaining of back pain, and was diagnosed with chronic lower back pain. At the January 7 visit, he was sent for x-rays, which were normal. Ms. Hopkins testified that an MRI would be appropriate, and acknowledged that if plaintiff had normal MRI results, no work restrictions would be needed.
24. Plaintiff returned to Dr. Pridgen on June 26, 2003 complaining of back and right shoulder pain. Per Dr. Pridgen's testimony, plaintiff had made no mention of any right shoulder pain in relation to his injury by accident and the right shoulder pain was unrelated to his injury by accident. The records show that Dr. Pridgen had in fact treated the plaintiff for right shoulder pain in January 2002, two months prior to his injury by accident. Dr. Pridgen also testified that the cervical spondylosis present on plaintiff's x-rays at that time was not related to his injury by accident. Because of plaintiff's longstanding subjective complaints of unresolved pain, Dr. Pridgen referred plaintiff to an orthopaedist.
25. Plaintiff was seen by Dr. Mark Rodgers of Atlantic Orthopaedist on July 22, 2003. Plaintiff provided the doctor with a history of being injured in February 2003 (rather than 2002), resulting in pain in his lower back and right shoulder. Upon physical examination, Dr. Rodgers found no significant symptoms of radiculopathy or any neurologic deficit in the upper or lower extremities. There was no specific tenderness to palpation of his lumbar spine, although plaintiff complained of pain on motion of his shoulder. Dr. Rodgers used one Waddell's maneuver, which elicited a positive result, a possible indication of no underlying physiological basis for plaintiff's complaints. Dr. Rodgers assessed plaintiff with a soft tissue injury, probably myofascial, and he expected plaintiff would make a complete recovery over time. He related this to the injury by accident, based upon the history plaintiff had given him.
26. After reviewing plaintiff's prior medical records as well as learning that plaintiff had been treated for right shoulder pain two months prior to his injury by accident and that he had made no complaints of right shoulder pain for over a year after his injury by accident, Dr. Rodgers testified that plaintiff's right shoulder condition was unrelated to his injury by accident.
27. Dr. Rodgers expressed some surprise when he learned in the deposition that plaintiff's injury had actually occurred in 2002 instead of 2003, and testified that he would have expected plaintiff's pain would have resolved by the time plaintiff had been seen at his office. Although Dr. Rodgers testified that the low back complaints plaintiff exhibited at the time he saw him were more likely than not related to his injury by accident because they were in the same area of the back, Dr. Rodgers also testified that he had difficulty connecting those complaints with the ones experienced by plaintiff after his injury because of the significant time which had elapsed without plaintiff seeking treatment. Dr. Rodgers gave his opinion that Plaintiff retained a "small impairment" due to his injury by accident, which he assessed as five percent (5%). Dr. Rodgers also referred Plaintiff to Dr. John Liguori of Coastal Rehabilitation in Wilmington, NC for further assessment of his pain complaints.
28. Plaintiff was seen by Dr. Liguori on August 14, 2003. Plaintiff reported that since the date of his injury by accident, he had experienced chronic back pain located in his neck between his shoulders, his lumbar spine and down the iliolumbar area which he described as a constant dull ache that never went away, as well as vague symptoms in his right arm. Plaintiff's description of his pain as having been continuous since the date of his injury is not consistent with his history of medical treatment. Plaintiff failed to continue with physical therapy as prescribed, did not continue to take pain medications and did not seek further medical treatment for an extensive period of time, even though it was authorized.
29. As suggested by Dr. Liguori, MRIs were taken of the lumbar and cervical regions of plaintiff's back, and were read as being unremarkable. Physical therapy was ordered; however plaintiff did not attend. Although plaintiff testified that Dr. Liguori told him that he could only perform light duty work, Dr. Liguori testified that he never discussed work restrictions with plaintiff.
30. Plaintiff failed to appear for a scheduled visit at Coastal Rehabilitation on September 15, 2003. Plaintiff did not return to Coastal Rehabilitation until November 11, 2003. At that time plaintiff stated that he hadn't started physical therapy because he didn't have any transportation. This claim by plaintiff is inconsistent with testimony by LaRae Hayes, the manager for plaintiff's current employer, Joe's Old Fashioned Barbecue, Inc. According to Ms. Hayes' testimony, which was taken by deposition on November 17, 2003, she had no knowledge of plaintiff having any transportation problems since he started working for her in August 2003. Ms. Hayes further testified that the plaintiff drove himself to work every day.
31. At the November 11, 2003 visit at Coastal Rehabilitation, plaintiff again presented with no objective symptoms, and he was again referred to physical therapy, this time at Columbus County Hospital in Whiteville. Once again plaintiff did not attend the prescribed physical therapy even though he lives in Whiteville.
32. Although plaintiff at his November 11, 2003 visit was told to return for follow-up to Coastal Rehabilitation in December 2003, and even though defendants scheduled an appointment for him in January 2004, plaintiff did not return to Dr. Liguori until he was ordered (on Feb. 11, 2004) by the Deputy Commissioner to attend an appointment on February 19, 2004.
33. According to Dr. Liguori, Plaintiff finally began attending physical therapy in March 2002. Dr. Liguori testified that since starting physical therapy, plaintiff had stated that his pain was at least fifty percent (50%) better. In Dr. Liguori's opinion, should plaintiff continue being compliant with physical therapy, he anticipated that a functional capacity evaluation would show that plaintiff was capable of performing work in at least a moderate labor category. In Dr. Liguori's opinion, at that time plaintiff's permanent impairment to his back could range from between zero and five percent (0 and 5%).
34. Both Dr. Rodgers and Dr. Liguori testified that they based their opinions as to the relationship between plaintiff's injury and his current condition on plaintiff's statements to them.
35. Plaintiff in his sworn answers to interrogatories admitted that he had made no attempts to seek employment after leaving defendant-employer. He provided no testimony at hearing regarding any attempt to obtain employment prior to accepting a position with Joe's Old Fashioned Barbecue, Inc. When he did testify about his employment at Joe's, plaintiff claimed that he worked reduced hours due to his back condition.
36. Beginning the week of August 28, 2003 plaintiff began working as a cook for Joe's Old Fashioned Barbecue, Inc. at $6.50 per hour with time and a half for overtime. Plaintiff claimed that his current employer cut his work hours from 40 hours per week to 25 hours per week because of the pain. Plaintiff's supervisor at Joe's Old Fashioned Barbecue testified that she had never decreased plaintiff's hours because of complaints of back pain, and that plaintiff had never stated that he was unable to perform any of his duties because of back pains or that he was having problems with his back.
37. Ms. Hayes also submitted time sheets showing that with the exception of his first week of employment, the only week that plaintiff worked less than 36.74 hours between August 28, 2003 and October 29, 2003 was the week ending September 26, 2003, which was the week of the Industrial Commission hearing in this matter. According to the time sheets, during both the week prior to the hearing and the week after the hearing plaintiff worked in excess of 40 hours.
 ***********
The foregoing findings of fact engender the following:
 CONCLUSIONS OF LAW
1. On or about March 29, 2002, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant Badcock Home Furniture. N.C. Gen. Stat. §97-2(6).
2. At the time of his injury by accident of March 29, 2002, plaintiff's average weekly wage was $296.36, yielding a compensation rate of $197.58. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff is not entitled to temporary total disability benefits between March 29, 2002 and April 18, 2002. Plaintiff was not taken out of work for more than seven calendar days by any physician. At all times, suitable work within his restrictions was made available to him by the defendant-employer. Plaintiff unjustifiably refused such employment. N.C. Gen. Stat. §§ 97-28, 97-32, Franklin v. Broyhill Furniture Indus.,123 N.C. App. 200 (1996).
4. Plaintiff is not entitled to temporary total disability or temporary partial disability benefits after April 18, 2002. Plaintiff voluntarily resigned his employment when a suitable job within his work restrictions was available and offered to him by the defendant-employer. N.C. Gen. Stat. § 97-32, Shah v. Howard Johnson, 140 N.C. App. 58 (2000), disc.Review denied, 353 N.C. 381 (2001).
5. Plaintiff has otherwise failed to meet his burden of proving that he suffered any diminution in his capacity to earn wages and should be entitled to receive temporary partial disability benefits following his resignation from defendant-employer on April 18, 2002. Plaintiff made no effort to seek employment following his resignation from defendant-employer until taking a job with Joe's Old Fashioned Barbecue, Inc. on August 28, 2003. Even assuming that he sought other employment between April 18, 2002 and August 28, 2003, plaintiff provided no competent evidence that his inability to obtain employment during this time was a result of his injury by accident. N.C. Gen. Stat. §§ 97-2(9),97-30, Russell v. Lowes Prod. Distrib., 108 N.C. App. 762 (1993).
6. Plaintiff is entitled to continuing medical benefits as will reasonably tend to lessen plaintiff's period of disability or reasonably tend to effect a cure or give relief as are related to his injury by accident to his lower back on March 29, 2002. N.C. Gen. Stat. §§ 97-2(19),97-25.
7. Pursuant to Dr. Rodgers testimony, plaintiff suffered a five percent (5%) permanent partial impairment to his back as a result of the compensable injury. N.C. Gen. Stat. § 97-31(23).
8. The evidence does not establish that either party engaged in stubborn unfounded litigation. N.C. Gen. Stat. § 97-88.1
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission MODIFIES the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay the medical expenses incurred by plaintiff for reasonably necessary treatment for his back, including all physical therapy.
2. Plaintiff's claim for compensation for temporary total or temporary partial disability benefits is DENIED.
3. Defendants shall pay to plaintiff a lump sum of compensation at the rate of $197.58 per week for fifteen weeks for the five percent (5%) permanent impairment to his back.
4. A reasonable attorneys fee in the amount of twenty-five percent of the compensation due Plaintiff under this Opinion Award shall be paid directly to plaintiff's counsel.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER