BHARAT SHAH, EMPLOYEE, PLAINTIFF-APPELLANT v. HOWARD JOHNSON, EMPLOYER, SELF-INSURED, KEY RISK MANAGEMENT SERVICES, SERVICING AGENT, DEFENDANT-APPELLEES

No. COA99-964

(Filed 19 September 2000)

**1. Workers' Compensation— payment of compensation without prejudice to right to contest—improper**

The Industrial Commission did not act arbitrarily or abuse its discretion in a workers' compensation action arising from the shooting of a motel night auditor by finding that defendant improperly used Form 63 and improperly stopped payments. An

## SHAH v. HOWARD JOHNSON

[140 N.C. App. 58 (2000)]

employer or insurer using Form 63 under N.C.G.S. § 97-18(d) has the burden of demonstrating the reasonableness of its uncertainty about the compensability of the claim, which this defendant failed to do; moreover, by utilizing the Form 63 procedure, defendant effectively avoided the necessity of filing Form 24 and seeking permission from the Commission to stop weekly compensation payments.

2. **Workers' Compensation— lodging furnished with job— value**

There was sufficient evidence in a workers' compensation action arising from the shooting of a motel night auditor to support the Industrial Commission's finding that the value of the lodging furnished to plaintiff at the business was $100 per week and that plaintiff received lodging in lieu of additional wages.

3. **Workers' Compensation— refusal of suitable job offer— change of location—fears for safety**

The conclusion of the Industrial Commission in a workers' compensation action that the employment offered by defendant-employer was suitable and unjustifiably refused by plaintiff was supported by the findings. Plaintiff contended that the Commission failed to consider his change of residence from North Carolina to California and his fear of returning to his former employment, but it is clear from plaintiff's testimony that he based his rejection of the job offer on his perceived physical limitations rather than his fears for his safety or his distance from his former job location.

4. **Workers' Compensation— refusal of suitable job offer—all compensation suspended**

The Industrial Commission in a workers' compensation action correctly suspended plaintiff's right to compensation from the date a suitable job offer was rejected. Although plaintiff argued that the job offer included only salary and not lodging, as had his former job, and that he should therefore receive an amount based on the value of the lodging even after he refused the job offer, the express terms of N.C.G.S. § 97-32 prohibit an employee from receiving any compensation during the continuance of his refusal to accept employment suitable to his capacity.

Appeals by both plaintiff and defendant from an Opinion and Award filed 23 March 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 April 2000.

On 16 December 1995, Bharat Shah (plaintiff) began work for UDP, Inc., d/b/a Howard Johnson (defendant-employer) as a night auditor. Plaintiff worked the third shift, which began at 11:00 p.m. and ended at 7:00 a.m., and was responsible for the front desk during his shift. Plaintiff received a salary of $200.00 per week, was allowed to lodge at the business, and ate meals with the manager's family.

On the night of 31 December 1995, shortly after plaintiff's shift began, plaintiff and another employee were robbed at gunpoint and shot. Plaintiff survived gunshot wounds to his back, hand and left leg, but the other employee's injuries were fatal. Plaintiff was admitted to Carolinas Medical Center (CMC) shortly after midnight on 1 January 1996 and subsequently underwent six surgical procedures while there. After his discharge from the hospital on 14 January 1996, plaintiff flew to his brother's home in California to recuperate.

On 13 January 1996, a Claims Representative for defendant's servicing agent executed a Form 63, Notice to Employee of Payment of Compensation Without Prejudice to Later Deny the Claim, advising plaintiff that payments of workers' compensation benefits would be made without prejudice to defendant's right to contest plaintiff's claim or its liability. On 14 January 1996, defendant began paying plaintiff compensation in the amount of $133.34 per week, based on a salary of $200.00 per week.

While in California, plaintiff was treated by Dr. Stephen A. Smith, an orthopedic surgeon. Dr. Smith recommended that plaintiff use crutches and receive physical therapy. Plaintiff testified he used two crutches until the end of February 1996, one crutch until the end of April 1996, and a cane through the end of June 1996. On 26 March 1996, Dr. Smith released plaintiff to return to work as a night auditor with restrictions placed on the amount of time he could stand. Soon thereafter defendant offered plaintiff his old job as a night auditor in Charlotte at his former salary of $200.00 per week, but plaintiff refused the offer. It does not appear that room and board was included in the job offer to plaintiff. After plaintiff's refusal, defendant stopped payments of compensation to him and filed Form 61, Denial of Workers' Compensation Claim, denying any *further* liability on plaintiff's claim in that he had refused to accept suitable employment.

## SHAH v. HOWARD JOHNSON

[140 N.C. App. 58 (2000)]

While plaintiff was in California, he took a temporary job with a computer company from 1 June until 20 June 1996, working as an accountant and bookkeeper and earning $10.00 per hour. After 20 June 1996, plaintiff returned to India with his parents and remained there for six months in order to care for his parents. He married while in India but neither worked nor sought employment while there. He was able, however, to operate a motor scooter during the six months he was in India. Plaintiff returned to the United States in December 1996 and was seen again by Dr. Smith, who felt that plaintiff was "doing as well as he'll do." Dr. Smith also opined that plaintiff would "always have some permanent objective residual with regard to his quadriceps weakness secondary to the shotgun blast damage that was done."

Following a hearing, a deputy commissioner found that the value of the room and meals furnished to plaintiff was $100.00 per week and awarded plaintiff additional compensation of $66.67 per week for the period from 31 December 1995 through 29 March 1996, the date plaintiff refused defendant's job offer. The deputy commissioner also concluded that defendant's use of Form 63 and Form 61 was proper. Both parties appealed to the Full Commission. The Full Commission upheld the additional payment of $66.67 per week to plaintiff for the time period beginning 31 December 1995 and ending 29 March 1996, but reversed that portion of the order regarding defendant's use of Forms 63 and 61. The Commission levied sanctions against defendant in the amount of $2,500.00 for failure to file the proper forms and adhere to the proper procedures in terminating plaintiff's benefits. Both parties appealed.

*Mark T. Sumwalt for plaintiff appellant-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Hatcher Kincheloe and Sharon E. Dent, for defendant appellant-appellee.*

HORTON, Judge.

The law governing appellate review of Industrial Commission decisions is well settled in this state. Review "is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Barham v. Food World,* 300 N.C. 329, 331, 266 S.E.2d 676, 678, *reh'g denied,* 300 N.C. 562, 270 S.E.2d 105 (1980). Furthermore, so long as there is some "evidence of substance which

directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary." *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980).

### Defendant's Appeal

First, defendant argues that the Commission erred in imposing sanctions for its allegedly improper use of Form 63. Second, defendant argues that the Commission erred in finding that plaintiff's free lodging and food, valued at $100.00 per week, was in lieu of wages so that plaintiff's salary at the time of the injury by accident was actually $300.00 per week. While we have carefully considered both arguments, we affirm the decision of the Commission in both respects.

### Sanctions for use of Form 63

[1] With respect to the alleged improper use of Form 63, the Full Commission made the following findings of fact:

> 5. Plaintiff began employment with the defendant-employer on December 16, 1995 as a desk clerk and night auditor.

> 6. On December 31, 1995, plaintiff was performing his regular job duties as a desk clerk and night auditor when he was robbed at gunpoint. Plaintiff received multiple gunshot wounds in his back, right arm and left thigh. A co-worker was fatally wounded at the same time.

> * * * *

> 22. On January 14, 1996, defendant began paying plaintiff pursuant to a Form 63, Payment of Compensation Without Prejudice to Later Deny the Claim. Under the unquestionably compensable circumstances in which plaintiff was injured, defendant should have paid plaintiff for his compensable injuries pursuant to either a Form 21 Agreement for Compensation or a Form 60 Employer's Admission of Employee's Right to Compensation. If defendant had used the proper form, defendant would have been required to obtain Commission approval prior to terminating plaintiff's benefits for his compensable injuries. Further, the filing of the proper form with the Commission would have prevented defendant from unilaterally terminating the plaintiff's benefits.

Based on these findings of fact, the Commission then concluded that:

2. Defendant should have filed a Form 21 Agreement for Compensation or a Form 60 Admission of Employee's Right to Compensation, but instead defendant filed a Form 63 Payment of Compensation Without Prejudice to Later Deny the Claim. Defendant's decision to deny plaintiff's claim based on a disagreement over continuing liability during the 90-day period following defendant's notice of the plaintiff's injury was not permissible. Plaintiff should have been allowed the opportunity to be heard on the termination of his benefits pursuant to the Form 24 procedure adopted by the Commission. N.C. Gen. Stat. §§ 97-18(b), 97-18(d) and 97-18.1.

Based on its conclusion of law, the Commission ordered that the defendant pay $2,500.00 as sanctions "for its failure to file the appropriate Form 21 or Form 60 and for subsequently failing to follow statutory procedures for termination of benefits."

Despite the Commission's finding that plaintiff was injured under "unquestionably compensable circumstances," defendant contends that the police were investigating the shooting incident, and it had no way of being certain that this was a compensable claim. Therefore, defendant argues that it was justified in filing the Form 63. We disagree.

N.C. Gen. Stat. § 97-18(d) (1999) provides that when the employer or insurer is uncertain "on reasonable grounds" whether a claim is compensable, it may begin payments of compensation "without prejudice and without admitting liability." *Id.* In order to comply with the statute,

[t]he employer or insurer is required to file the prescribed form, I.C. Form 63, stating that the payments are made without prejudice, and that such payments continue until the claim is either accepted or contested or until 90 days from the date upon which the employer first obtains written or actual notice of the injury. If, during the 90 day period, which may be extended by the Commission for an additional 30 days upon application, the employer or insurer contests compensability, it may cease payment upon giving the proper notice specifying the grounds upon which liability is contested. However, if the employer or insurer does not contest compensability of the claim or its liability therefor within the statutory period, it waives its right to do so and the entitlement to compensation becomes an award of the Commission pursuant to G.S. § 97-82(b).

*Higgins v. Michael Powell Builders*, 132 N.C. App. 720, 723-24, 515 S.E.2d 17, 20 (1999).

The evidence in the record overwhelmingly supports the Commission's finding that plaintiff was shot during a robbery and thus was injured under "unquestionably compensable circumstances." Plaintiff and a coworker were held at gunpoint and forced to give the perpetrators the money in the cash register. The police investigation was aimed at ascertaining the circumstances of the incident and the identities of the perpetrators. Defendant responds that the assault on plaintiff by an unknown assailant might have been for personal reasons and thus not compensable under the holding of *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E.2d 350 (1972).

In *Robbins*, the deceased employee was shot and killed by the husband of a coworker. Because the underlying impetus for the attack lay in an ongoing domestic dispute, the court held that the fatal injury to the employee did not arise out of his employment with the defendant in that case. In *Robbins*, our Supreme Court stated that

> when the moving cause of an assault upon an employee by a third person is personal, or the circumstances surrounding the assault furnish no basis for a reasonable inference that the nature of the employment created the risk of such an attack, the injury is not compensable. This is true even though the employee was engaged in the performance of his duties at the time, for even though the employment may have provided a convenient opportunity for the attack, it was not the cause.

*Id.* at 240, 188 S.E.2d at 354.

Here, there is nothing in the record to support defendant's speculation that the assault on plaintiff might have been personally motivated. When an employer or insurer avails itself of the procedure set out in N.C. Gen. Stat. § 97-18(d) and utilizes Form 63 to make payments to an employee without prejudice, the employer or insurer has the burden of demonstrating that it had at that time "reasonable grounds" for its uncertainty about the compensability of the claim. Defendant states in its appellate brief that "the Record is devoid of evidence of what Defendant knew and did not know when the Form 63 was filed . . . ." The burden was on the defendant to place in the record evidence to support its position that it acted on "reasonable grounds." Defendant having failed to offer evidence to support the

reasonableness of its belief, we affirm the conclusion of the Commission that defendant's use of Form 63 in this case was improper.

Even had defendant demonstrated reasonable grounds to use the Form 63 procedure, it erred when it unilaterally terminated plaintiff's benefits because plaintiff allegedly refused suitable employment. The professed grounds for termination of benefits had no relation as to whether the assault on plaintiff had its origins in a personal dispute. Had defendant properly admitted compensability in the first instance by filing Form 21, it would not have been allowed to unilaterally cease payments to plaintiff but would have had to first seek the permission of the Commission. By utilizing the Form 63 procedure, defendant effectively avoided the necessity of filing Form 24 and seeking permission of the Commission to stop weekly compensation payments. The Commission found, and we agree, that is an improper use of Form 63. If an employer or insurer initially believes that a claim may not be compensable and utilizes the Form 63 procedure, then discovers after investigation that the claim is clearly compensable, the better practice would be for defendant to promptly file either Form 21 or Form 60. In the case before us, the Commission found that defendant improperly used the Form 63 procedure and improperly stopped payments to plaintiff. In its discretion, the Commission then imposed sanctions of $2,500.00 on defendant. On this record, we cannot say that the Commission acted arbitrarily or abused its discretion. This assignment of error is overruled.

### Value of Lodging as Wages

[2] Defendant also argues that the Commission erred in finding that the value of plaintiff's lodging was $100.00 per week, and that plaintiff received lodging in lieu of additional wages. N.C. Gen. Stat. § 97-2(5) (1999) provides in pertinent part that "[w]herever allowances of any character made to an employee in lieu of wages are specified part of the wage contract they shall be deemed a part of his earnings." *Id.*

On this issue, the Commission found the following facts:

3. The Full Commission reopened this matter for additional evidence on the value of the lodging that was provided to the plaintiff in order to calculate the average weekly wage. The parties were unable to stipulate to or provide additional evidence on the reasonable market value of plaintiff's lodging. Therefore, the

Commission finds as fact, based upon the stipulated Form 22 Wage Chart, that the value of the lodging provided to the plaintiff was $100.00 per week.

4. At the time that he sustained the compensable injury by accident on December 31, 1995, plaintiff's average weekly wage was $200.00 a week salary plus $100.00 for food and lodging for a total of $300.00. Plaintiff's salary would have been higher if he had secured his own living arrangements.

Because we are bound by the findings so long as there is some evidence of record to support them, we must disagree with defendant's argument. On 11 January 1996, the employer-defendant submitted Form 22 to the Industrial Commission, indicating that plaintiff's salary was $200.00 per week, and that a motel room was provided for him at a value of $100.00 per week. In the Form 33R it filed on 1 July 1996, defendant contended that "employee/plaintiff's average weekly wage is $300.00, which includes $100.00 lodging allowance." Further, in its answers to interrogatories served by plaintiff, defendant admitted that lodging was part of plaintiff's employment contract, and that the value of such lodging was $100.00 per week. Finally, we note that defendant's general manager testified that plaintiff was hired for $800.00 per month "plus living expenses." Although defendant obtained new counsel and subsequently sought to amend its Form 33R and interrogatories to deny that lodging was a part of plaintiff's employment package, there was ample evidence to support a finding that lodging was furnished to plaintiff as part of his employment contract, and that such lodging had a value of $100.00.

We are aware that plaintiff elicited evidence that the room provided for plaintiff normally rented to the public for $42.00 per night, plus taxes. There was no evidence of the cost of the room when rented on a long-term basis. Even if the daily rental figure is some indication of the "value" of the room as part of plaintiff's wage package, the Commission could reject that figure as a measure of value and adopt the figure of $100.00 per week. We hold there is substantial competent evidence to support the Commission's finding that the value of plaintiff's lodging was $100.00, and overrule this assignment of error.

## Plaintiff's Appeal

Plaintiff makes three arguments on appeal. First, plaintiff argues that the Commission erred in finding the value of his lodging to be only $100.00 per week. Next, plaintiff argues that the Commission

SHAH v. HOWARD JOHNSON

[140 N.C. App. 58 (2000)]

erred in concluding that he had unjustifiably refused suitable employment offered him by defendant. Finally, plaintiff argues that the Commission erred in concluding that his refusal of the job offered by defendant subjected him to loss of benefits.

## Value of Plaintiff's Lodging

For the reasons stated above in our discussion of defendant's appeal, we find competent evidence in the record to support the Commission's finding regarding the value of the lodging provided to plaintiff and overrule this assignment of error.

## Plaintiff's Refusal of Employment Offer

[3] Plaintiff next assigns error to the Commission's conclusion that the employment offered him by defendant-employer, following his release to return to work, was "suitable" and was unjustifiably refused by plaintiff. Our review is limited to whether or not the findings made by the Commission support this conclusion. *Barham*, 300 N.C. 329, 331, 266 S.E.2d 676, 678.

The Commission made the following pertinent findings:

11. On March 26, 1996, Dr. Smith signed a work release form authorizing plaintiff to return to his night auditor position with the restriction that plaintiff could not stand for extended periods of time.

\* \* \* \*

13. Sometime in late March 1996, Chet Dakoriya offered to allow the plaintiff to return to the night auditor position that he had held at the time that he was shot. Mr. Dakoriya agreed to make accommodations for the plaintiff. Earlier on February 21, 1996, medical case manager Jo Anne Johnson faxed a job description form to Mr. Dakoriya. Mr. Dakoriya did not complete the form in its entirety so Ms. Johnson went to Charlotte and specifically had Ash Patel assist in completing the form. This job description form was reviewed by Dr. Smith who then released plaintiff to return to work as a night auditor with the restrictions of no prolonged standing or walking. Mr. Dakoriya agreed to accommodate these restrictions. The job offered to plaintiff was an offer of suitable employment that took into consideration plaintiff's physical limitations and was not so modified to be considered make-work.

\* \* \* \*

16. Plaintiff did not testify that he was afraid to return to the position offered by the defendant-employer in late March 1996 nor was any evidence presented that plaintiff could not safely perform the night auditor position.

Based on these findings the Commission concluded that

3. Plaintiff unjustifiably refused the March 1996 job offer of a suitable night auditor position with the defendant-employer. Assuming arguendo that plaintiff did not accept this job offer for the position in Charlotte, North Carolina because he was afraid to return to his former position, such a fear does not justify plaintiff's refusal when no evidence was presented that such a fear caused plaintiff to suffer an inability to perform the job safely.

We hold that the findings made by the Commission support its conclusion that the position offered to plaintiff was "suitable" in terms of his physical ability to perform it, as well as its conclusion that the plaintiff's refusal to accept the tendered employment was unjustified.

N.C. Gen. Stat. § 97-32 (1999) requires the employment offered an employee be "suitable to his capacity." Our appellate decisions have defined "suitable" employment to be any job that a claimant "is capable of performing considering his age, education, physical limitations, vocational skills, and experience." *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994). Although there is ample medical evidence that plaintiff was able to perform the job of night auditor at Howard Johnson's when that job was offered to him, he strenuously argues that the Commission erred in failing to consider his change of residence from North Carolina to California and his fear of returning to his former employment in determining that his refusal of employment was unjustified. We disagree.

While it seems obvious that suitable employment for a person would normally be located within a reasonable commuting distance of that person's home, none of our appellate decisions deal with the situation where a worker moves from North Carolina to a distant state following his compensable injury and then rejects an offer to return to his former employment. Our Employment Security Act provides in part that "[i]n determining whether or not any work is suitable for an individual, the Commission shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and

prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence." N.C. Gen. Stat. § 96-14(3) (1999).

Some of our sister states have held that their counterpart of our Industrial Commission could consider the residence of the employee at the time of the job offer in determining whether the employee was justified in refusing the offer of employment. See, for example, *Food Lion, Inc. v. Lee*, 431 S.E.2d 342 (Va. App. 1993) (justification is a much broader inquiry than just the " 'intrinsic aspects of the job[]' ") (quoting *Johnson v. Virginia Employment Comm'n*, 382 S.E.2d 476, 478 (Va. App. 1989)); *Jones-Jennings v. Hutzel Hospital*, 565 N.W.2d 680 (Mich. App. 1997), *appeal denied*, 586 N.W.2d 233 (Mich. 1998) (holding where distance is a factor in determining the reasonableness of an employee's refusal of a bona fide offer of employment the court looks at the employee's place of residence at the time the offer is made); *Roadway Express, Inc. v. W.C.A.B.*, 659 A.2d 12 (Pa. Commw. 1995), *appeal denied*, 670 A.2d 145 (Pa. 1995) (holding that in order for a job to be "available" to an employee the court must consider physical limitations, age, education, work experience, and " 'other relevant considerations, such as his place of residence' ") (quoting *Kachinski v. W.C.A.B.*, 532 A.2d 374, 379 (Pa. 1987)); *City of Pittsburgh/PMA Mgmt. Corp. v. W.C.A.B.*, 705 A.2d 492 (Pa. Commw. 1998) (holding that an employee is not disqualified from receiving benefits when he relocates in good faith and the employer in that case must refer him to a job within reach of his new residence). Here, however, plaintiff's testimony regarding the job offer was centered on how he "felt" physically, not the location of the job.

As to plaintiff's contention that he was afraid to return to his former employment, this Court concluded in *Bowden v. The Boling Company*, 110 N.C. App. 226, 429 S.E.2d 394 (1993), that

> if a person's fear of returning to work renders the job unsafe for his performance then it is illogical to say that a suitable position has been offered. Although plaintiff may be able to perform work involving the use of his right arm, the availability of positions for a person with one functional arm does not in itself preclude the Commission from making an award for total disability if it finds upon supported evidence that plaintiff because of other preexisting conditions is not qualified to perform the kind of jobs that might be available in the marketplace. While the positions offered to plaintiff by defendants may in fact be performed by a person

with only one functional arm, the question is whether the jobs could be performed safely by this plaintiff.

*Id.* at 232-33, 429 S.E.2d at 398 (citation omitted).

The evidence offered by plaintiff does not support his theory that he refused the offer of his former employment as night auditor because he was frightened to return to the job. The Commission found as a fact that "[p]laintiff did not testify that he was afraid to return to the position offered by the defendant-employer in late March 1996 nor was any evidence presented that plaintiff could not safely perform the night auditor position." An examination of the transcript of the plaintiff's hearing testimony reveals the correctness of the Commission's finding. Plaintiff testified at the hearing before the deputy commissioner that at the time of the defendant's job offer in March he could neither stand nor walk, so he was not interested in the offer because of "how [he] felt at that time." Therefore, it is clear that plaintiff based his rejection of the job offer on his perceived physical limitations, not on his fears for his safety or his distance from his former job location.

Faced with conflicting evidence about plaintiff's ability to perform the job of night auditor in March 1996; the Commission elected to accept the opinion of Dr. Stephen Smith that plaintiff was then able to carry out the job as offered by defendant. The credibility of witnesses and the weight to be given credible evidence are for the Commission. Therefore, we hold that the Commission's conclusion that plaintiff "unjustifiably refused the March 1996 job offer of a suitable night auditor position with the defendant-employer" is supported by the findings of fact, which are in turn supported by competent evidence of record.

[4] Finally, plaintiff assigns error to the effect of the Commission's decision, pursuant to N.C. Gen. Stat. § 97-32, to halt all compensation from the date that the offer was made and rejected. Plaintiff argues that even if the Commission was correct in concluding that the plaintiff rejected without justification a suitable job offer, plaintiff would still be entitled to some compensation following his rejection of the night auditor position. Plaintiff reasons that he was offered his former job at the same weekly salary of $200.00 but was not offered lodging, which the Commission valued at $100.00 per week. Therefore, he concludes, he would be entitled to $66.67 per week (two-thirds of $100.00) for his loss of earnings.

While plaintiff capably argues his position, we must agree with the Commission that the express terms of N.C. Gen. Stat. § 97-32 prohibit an employee from receiving *any* compensation during the continuance of his refusal to accept employment suitable to his capacity. *Id.* The statutory provision has been held inapplicable to an employee determined to be *totally* and permanently disabled pursuant to N.C. Gen. Stat. § 97-29. *See Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986). One of its purposes is to prevent an employee who is *partially* disabled from refusing suitable employment and thus increasing the amount of compensation payable to him. *Id.* As we discussed above, the Commission correctly concluded that the plaintiff unjustifiably refused an offer of suitable employment. Therefore, the Commission was also correct in concluding that plaintiff's "right to compensation is suspended so long as he continues to refuse suitable employment." Plaintiff's final assignment of error is overruled.

Affirmed.

Judges WYNN and SMITH concur.