I dissent from the majority's finding and conclusion that defendant's defense of this claim was reasonable. In my opinion, the greater weight of the evidence establishes that defendant's conduct constituted stubborn. unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act. Troutman v. White Simpson,Inc., 121 N.C. App. 48, 464 S.E.2d 481 (1995).
Defendant's initial denial of liability for plaintiff's claim constituted stubborn, unfounded litigiousness. On January 27, 2001, plaintiff was performing her duties as a nurse in defendant-employer's emergency room. In the performance of her duties, plaintiff was asked to help start an I.V. on a patient. The patient weighed between 250 and 300 lbs. and was agitated and combative. The patient assaulted plaintiff, striking her at least three times about the face, neck, back, head and shoulders, resulting in plaintiff falling to the floor. Another nurse, Frank Luther, and security guard Walt Ingle came to plaintiff's assistance, and the emergency room physician on duty gave her immediate treatment.
Plaintiff reported the assault and injuries to her charge/managing nurse, Glenda Sanderson, RN, who completed an "Employee Occurrence Report" on January 27, 2001. Mr. Luther and Mr. Ingle were listed as "eyewitnesses" to the assault. Another incident report was completed by the Security Department on January 27, 2001, all of which described the assault on plaintiff. A January 27, 2001 "Work Status Summary" was prepared which noted that plaintiff was starting an I.V. on a combative patient and that there were three security officers present who pulled the patient off plaintiff after she had been struck three times about the head. One of the other nurses on duty in the emergency room at the time of the assault, Rita Moss, RN, did not witness the attack, but testified that she viewed the redness to the back of plaintiff's neck immediately after the assault. Following January 27, 2001, plaintiff continued to work for defendant-employer, despite continuing to experience pain in her back.
Due to continued pain, discomfort and incontinence, plaintiff saw her family physician, Brison Robertson, M.D. on March 9, 2001. Based upon Dr. Robertson's examination of plaintiff, an MRI of her lumbar and thoracic spine was ordered. Dr. Robertson then referred plaintiff to Eric L. Rhoton, M.D., a board-certified neurosurgeon. On March 16, 2001, Dr. Rhoton diagnosed plaintiff with central and left-sided T8-9 herniated nucleus pulposus with associated thoracic myelopathy, neurogenic bowel and bladder dysfunction, degenerative lumbar scoliosis with associated lumbar spinal stenosis at L4-5, severe latex allergy and pruritus with morphine, excessive sedation and decreased level of consciousness with Demerol in the past. Dr. Rhoton recommended surgical decompression of plaintiff's thoracic disc herniation with associated cord compression and stated that in his opinion, the disc herniation was work-related.
Plaintiff spoke with her immediate supervisor about the recommended thoracic surgery and the causal relationship between her need for surgery and the work-related assault. She was advised to apply for Family Medical Leave Act (FMLA) benefits. Due to concern about the interaction of workers' compensation benefits and FMLA benefits, plaintiff was directed to Mary Silver, defendant's workers' compensation administrator. Despite Ms. Silver's access to incident reports of plaintiff's January 27, 2001 assault, Ms. Silver advised plaintiff to file her surgery expenses with plaintiff's health insurance carrier. Ms. Silver testified that she did not, nor did anyone with defendant-employer ever interview any of the witnesses. Ms. Silver also did not personally seek any of plaintiff's medical records following the assault.
Plaintiff was admitted to the hospital March 20, 2001, had surgical repair of T8-T9, and was discharged March 22, 2001. The surgery was performed at defendant-employer's hospital. On March 25, 2001, just three days after her surgical discharge, plaintiff went to the emergency room because of fever, nausea, fatigue, back pain and numbness and weakness in her legs. On March 28, 2001, plaintiff provided defendant with a recorded statement detailing the origin, nature and extent of her injuries from the January 27, 2001 assault. Plaintiff returned to the emergency room again on April 9, 2001 for fever and chills.
Despite having knowledge and actual notice of the January 27, 2001 work-related assault on plaintiff, medical documentation of plaintiff's injuries and treatment due to the assault by at least mid-March 2001 and notice by at least March 26, 2001 that plaintiff was seeking workers' compensation benefits for surgery as a result of her injuries, defendant filed a Form 61 dated April 18, 2001, denying plaintiff's workers' compensation claim. As of April 18, 2001, defendant had already had approximately 30 days from the date of notice of plaintiff's need for surgery to investigate the compensability of her claim and more than 70 days from actual notice of her injury. Plaintiff, being a sole provider for herself, and being unable to work, was forced to use accrued sick and vacation time for financial support after defendant denied her claim. Defendant's denial of plaintiff's claim was unreasonable.
Defendant's refusal to pay plaintiff compensation from March 11, 2001 through April 11, 2001 constituted stubborn, unfounded litigiousness. Defendant filed a Form 63 dated May 7, 2001, commencing payment of temporary total disability benefits to plaintiff without prejudice as of April 12, 2001, even though plaintiff had been unable to work since March 11, 2001. Defendant's refusal to pay compensation to plaintiff during the period from March 11, 2001 through April 11, 2001 was unreasonable. Also, defendant decision to conditionally admit liability for plaintiff's claim under the circumstances by filing a Form 63 to pay without prejudice was unreasonable. "When an employer or insurer avails itself of the procedure set out in N.C. Gen. Stat. § 97-18(d) and utilizes Form 63 to make payments to an employee without prejudice, the employer or insurer has the burden of demonstrating that it had at that time `reasonable grounds' for its uncertainty about the compensability of the claim." Shah v. HowardJohnson, 140 N.C. App. 58, 64, 535 S.E.2d 577, 581 (2000) (citing N.C. Gen. Stat. § 97-18(d) (1999)). The burden is on the employer to place in the record evidence to support its position that it acted on reasonable grounds. Id. Failing to offer evidence to support reasonableness of its belief, defendant-employer's use of a Form 63, notifying the plaintiff-employee of its intent to make payment of compensation without prejudice and subsequent denial of claim is improper, thus warranting sanctions. Id. At the time defendant filed the Form 63, defendant had already, had ample time to investigate and they had information that overwhelmingly established that plaintiff's injury was compensable. Also, when the time period for payment without prejudice expired, this became an admitted claim and defendant was at least, then obligated to pay the March 11, 2001 through April 11, 2001 period of disability. Plaintiff was never paid for this period of disability.
Defendant's refusal to authorize the cervical MRI recommended by Dr. Rhoton in June 2001 and some other medical expenses arising from plaintiff's injury constituted stubborn, unfounded litigiousness. Dr. Rhoton saw plaintiff on May 22, 2001 and noted that she was still unable to work. Her referred her for work conditioning/physical therapy. In June 2001, plaintiff complained to Dr. Rhoton of continued neck pain and periods of numbness to her left arm. She reported that she had gotten hurt during physical therapy and could not continue. Dr. Rhoton recommended a cervical MRI, which defendant refused to authorize. Defendant's refusal to authorize the cervical MRI was unreasonable. On June 26, 2001, defendant returned a workers' compensation billing to Mountain Neurological, plaintiff's medical provider, stating that it was disputing the workers' compensation claim and to process the charges through health insurance. However, defendant never filed a second denial after the Form 63 was filed with the Industrial Commission. Plaintiff saw Dr. Rhoton on July 23, 2001 for development of pain in her neck, bilateral arm pain, hand numbness, tremor in both upper extremities and residual left thoracic pain. Plaintiff continued to be written out of work. On August 10, 2001, plaintiff finally had the cervical MRI paid for by her health insurance carrier. She presented to Cecil Durham, M.D. for nerve conduction and EMG studies, which were negative for carpal tunnel. On August 13, 2001, plaintiff filed a Form 33 Request for Hearing due to the failure of defendant to supply recommended medical treatment and properly pay temporary total disability benefits. Defendant's conduct made the hearing necessary.
Defendant's refusal to mail plaintiff's workers compensation checks to her after a written request from her attorney constituted stubborn, unfounded litigiousness. Despite a specific request from plaintiff that her checks be mailed to her and repeated requests from plaintiff's counsel, defendant refused to mail plaintiff's checks to her home, in violation of N.C. Gen. Stat. § 97-18(a) and N.C.I.C. Rule 403, forcing plaintiff or her representative to come to Mission St. Joseph's Health System to pick up her weekly checks. When asked at the hearing about why plaintiff was required to pick up her weekly checks, Mary Silver testified that it is defendant-employer's policy that all temporary total disability checks go through their office to insure that the check is timely and accurate and to give defendant-employer an opportunity to check-in with the employee to see if "everything is going right." Ms. Silver further testified, "We do this as a service basically to the employee." Plaintiff had to get someone to drive her to defendant-employer's health system to pick up her checks. Plaintiff testified that all of the checks handed to her were in sealed envelopes. After plaintiff's attorney's repeated requests to have plaintiff's checks mailed directly to her failed, plaintiff sought an order from the Industrial Commission. The Executive Secretary's Office issued an August 29, 2001 Order directing that all checks be mailed to plaintiff's home. Defendant's deliberate violation of the law caused the plaintiff to have to seek an order from the Industrial Commission.
Plaintiff's attorney should be awarded attorney fees under N.C. Gen. Stat. § 97-88.1 for defendant's unreasonable conduct in this case. The undisputed facts known to defendant establish that plaintiff's claim was timely filed in accord with the applicable law. N.C. Gen. Stat. § 97-24. Defendant's conduct as set forth above constituted stubborn, unfounded litigiousness. As a result of prosecuting this case on plaintiff's behalf, plaintiff's attorney spent 155 hours preparing the case for the hearing before the deputy commissioner. Plaintiff is entitled to a payment by defendant of a reasonable attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1 for defendant's unreasonable conduct which required plaintiff to initiate this claim and for defendant's unreasonable defense of this claim.
For the above reasons, I dissent in part from the majority opinion herein.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER