* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner. The Opinion and Award has been rewritten for clarity.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has *Page 2 
jurisdiction of the parties and the subject matter herein.
2. All parties are correctly designated and there is no question as to misjoinder or non-joinder of parties.
3. On June 20, 2007, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
4. On June 20, 2007, plaintiff was an employee of Piedmont Piping Mechanical Contracting, Inc., (hereinafter "defendant-employer") and held the position of mechanic. The employer-employee relationship existed between the parties on that date.
5. On June 20, 2007, National Trust Insurance Company was the workers' compensation carrier for the employer.
6. On the date in question, plaintiff sustained an injury when he fell at least 17 feet onto a concrete floor.
7. Plaintiff has not returned to gainful employment since he was injured on June 20, 2007.
8. No compensation had been paid to plaintiff as of the Deputy Commissioner's hearing.
9. Subsequent to the hearing before the Deputy Commissioner, defendants accepted the compensability of plaintiff's June 20, 2007 work accident and his resulting injuries pursuant to an I.C. Form 60 dated November 14, 2007, which was made a part of the record.
10. The parties stipulated into evidence the following:
 a. Stipulated Exhibit #1 — the pre-trial agreement, as modified and initialed by the parties, which includes Industrial Commission Forms and discovery documentation. *Page 3 
 b. Stipulated Exhibit #2 — the medical records.
 c. Stipulated Exhibit #3 — affidavit of true and complete copy of citations issued by OSHA.
11. The sole issue on appeal is whether plaintiff is entitled to a 10% increase in compensation pursuant to N.C. Gen. Stat. § 97-12.
 * * * * * * * * * * *
Based upon the competent, credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old. He attended school through the ninth grade.
2. After the hearing on November 7, 2007, defendants agreed to accept plaintiff's injuries as compensable and initiated payment of workers' compensation benefits by filing an I.C. Form 60 dated November 14, 2007.
3. Defendants paid plaintiff a lump sum payment for accrued temporary total disability benefits owed and initiated weekly temporary total disability payments at the rate of $354.08.
4. On June 20, 2007, plaintiff and other employees of defendant-employer were working at Central Elementary School, a new school which was under construction in Albemarle, North Carolina.
5. Between noon and 12:30 p.m. on June 20, 2007, plaintiff fell approximately 20 feet from the second floor mezzanine balcony at Central Elementary School to the floor below.
6. Plaintiff's injuries included a subarachnoid hemorrhage with intracranial *Page 4 
contusion, temporal skull fracture, right-sided hemothorax, multiple rib fractures, splenic laceration, right-sided retroperineal hematoma and a lumbar spine transverse process fracture.
7. Plaintiff was hospitalized for approximately one month in the intensive care unit at Carolinas Medical Center. During his hospitalization, plaintiff underwent a bronchoalveolar lavage of the right middle and left lower lobes, an open reduction internal fixation of facial fractures and a placement of tracheostomy cannula.
8. Plaintiff was discharged from the hospital on July 20, 2007 in stable condition and his prognoses for recovery was fair.
9. On October 1, 2007, plaintiff presented to Keith Clinic of Chiropractic for treatment due to sharp headaches located in the back of the head and the forehead, pain in the bilateral region of the neck, bilateral mid back pain, upper lumbar pain bilaterally and sacroiliac pain, pain in the chest and around the ribs, and memory problems.
10. In September 2007, plaintiff underwent a neuropsychological evaluation by Ervin S. Batchelor, Ph.D. at the Carolina Center for Development and Rehabilitation. Dr. Batchelor determined and the Commission finds that plaintiff is unable to work as a result of significant cognitive and emotional deficits resulting from his brain injury. Dr. Batchelor recommended that plaintiff receive additional treatment, i.e., PMR specialist evaluation, physical therapy evaluation, occupational therapy evaluation, cognitive rehabilitation in a day treatment program for individuals with brain injury, ENT specialist evaluation, formal driving evaluation, and neurosurgical evaluation for chronic pain.
11. Plaintiff has been unable to earn wages since June 20, 2007, due to the injuries sustained in his fall on that date.
12. Defendants filed a Form 61 on or about July 17, 2007, denying plaintiff's claim *Page 5 
on the basis that the injury did not occur during the course and scope of plaintiff's employment with defendant-employer. Defendants later filed a Form 33R stating that "the Plaintiff was on his lunch break at the time that the injury occurred and that Plaintiff was not in performance of his employment duties."
13. Roger Sellers is vice president of defendant-employer and his general duties include project management and estimation. Mr. Sellers was the project manager for the Central Elementary job. He answered plaintiff's interrogatories on behalf of defendant-employer. Mr. Sellers was not physically present when plaintiff fell and had no personal knowledge about whether plaintiff was at lunch or had returned to work when he was injured. Mr. Sellers also had not spoken to any person with knowledge that plaintiff was on his lunch break when he fell and offered no evidence at the Deputy Commissioner's hearing that plaintiff was at lunch when he fell.
14. On June 20, 2007, brothers Margolius and Uriah Jones were employed by Charlotte Ceilings and Tile and were also working on the second floor at the Central Elementary School job site. They had seen other employees of defendant-employer walk through the area all day, but they were the only workers in the area when plaintiff fell from the balcony. Margolius Jones stated that none of defendant-employer's workers were permitted to eat or drink in the building. Both stated that plaintiff was working and was not on his lunch break at the time he fell.
15. On June 20, 2007, Eric Helms was also working at Central Elementary school with defendant-employer's sheet metal crew. His job duties included telling the other crew members where to work and what had to be done. The sheet metal crew normally worked 7 a.m. until 5:30 p.m. with a 30 minute lunch break and was required to leave the building for lunch. At *Page 6 
approximately 11:45 a.m., Mr. Helms was called to a meeting and at the time he left the area, he instructed plaintiff to keep working. Mr. Helms never went back and told plaintiff he could go to lunch. Mr. Helms had directed plaintiff to perform work which would have placed him in the area where he fell. The materials the crew was using were located in the balcony area. The day before the hearing before the Deputy Commissioner, Mr. Helms informed defense counsel that plaintiff was working in the area before he fell.
16. Plaintiff had worked for defendant-employer for several months before he was injured. He generally started work at 7 a.m. and stopped at 5:30 p.m., with occasional overtime. Plaintiff was paid by the hour. The workers usually took 30 minutes for lunch each day. Plaintiff has no memory of when or if he took his lunch break on the day he was injured.
17. Dennis Armstrong was a field superintendent for defendant-employer, whose job duties included managing the labor and overseeing the entire job. Defendant-employer was responsible for the plumbing and HVAC at the Central Elementary job site. Due to the nature of their work, defendant-employer's employees worked all over the building. On the date in question, the employees' primary focus was on the second floor around the mezzanine area. Defendant-employer had no set rule as to the hours worked by sheet metal mechanics, but the typical work week for an employee in plaintiff's position was 40 hours with some overtime. Employees were not required to take a lunch break during certain hours; therefore, it was not possible to determine whether an employee was at lunch simply by the time of day. Employees were not prohibited from returning to work early when they finished lunch and on some days employees worked through lunch to be able to leave early for the day. Mr. Armstrong had no personal knowledge of whether plaintiff was at lunch or working immediately before the fall.
18. Prior to the day plaintiff fell, steel cables that were well braced and strong had *Page 7 
been in place across the balcony opening. The day before plaintiff's accident, Mr. Armstrong was asked by the general contractor to move a steel beam and he agreed to accommodate this request to foster the working relationship between defendant-employer and the general contractor. Mr. Armstrong and his co-worker Mark Jackson removed the steel cables to weld a piece of steel to the floor.
19. Mr. Jackson was employed by defendant-employer as a pipe fitter and mechanic and was Mr. Armstrong's "right-hand man" on the Central Elementary job. He was acting supervisor any time Mr. Armstrong was not present on the job site. Mr. Jackson was involved in erecting the cables across the balcony opening the day before the fall because Mr. Armstrong told him they needed to move a pole for the general contractor. Defendant-employer had welding equipment on the job site so the work took approximately 15 minutes to complete. Mr. Jackson and Mr. Armstrong were working on the clock for defendant-employer at the time the work was performed. Mr. Jackson felt it was important for defendant-employer to have a good working relationship with the contractor and, therefore, when doing the work, he did not think he was doing anything illegal or wrong by charging the time to defendant-employer. According to Mr. Jackson, before the pole was removed that held the cables, the cables were strong enough to hold a 200 pound weight applied in any direction.
20. Both Mr. Jackson and Mr. Armstrong were familiar with OSHA regulations and knew that OSHA regulations required that there be a barricade across the opening which could stop a person. Later in the day on June 19, 2007, they discussed the fact that the cables had not been properly re-installed, making the situation dangerous. With the steel pole removed, the cables were attached to a column with plastic zip ties because the cables were too short to go across the opening. At the time Mr. Jackson and Mr. Armstrong replaced the cables, they knew *Page 8 
the barrier did not comply with OSHA code. After the fall, Mr. Jackson measured the distance plaintiff fell as roughly 20 feet to the first landing and 5 feet to the concrete floor below that landing.
21. Mr. Armstrong worked for defendant-employer for approximately one year and was fired immediately after giving a statement to OSHA investigators about what occurred with regard to plaintiff's fall from the balcony.
22. Mr. Sellers testified at the Deputy Commissioner's hearing that on the day of plaintiff's injury, employees were not working in the area where plaintiff fell. Mr. Sellers also stated that moving the steel beam and removing the cables were not in the course of defendant-employer's work at the elementary school and that it was not within Mr. Armstrong's authority as the superintendent to undertake tasks or jobs that were not within the course of defendant-employer's contract. Prior to plaintiff's fall, Mr. Sellers had no knowledge that the opening was not properly barricaded.
23. The greater weight of the evidence shows and the Commission finds that the cable barriers in place at the time plaintiff fell from the balcony opening did not comply with OSHA regulations. Mark Jackson and Dennis Armstrong were acting within the course and scope of their employment with defendant-employer at the time they removed the cable barriers from the balcony opening and when they later replaced them in a manner that did not meet OSHA regulations. Therefore, defendant-employer willfully failed to comply with statutory regulations at the time the cable barriers were improperly replaced across the second floor balcony.
24. Plaintiff's fall was directly caused by the failure of defendant-employer's employees to properly barricade the second floor balcony opening.
25. Defendants received actual notice of plaintiff's injury within minutes of the time *Page 9 
it occurred on June 20, 2007.
26. Defendants filed a Form 61 denial of claim dated July 17, 2007. The basis for the denial was "there is no injury occurring in the course and scope of employment." However, defendants did not identify anyone who they claim had personal knowledge that plaintiff was on his lunch break at the time of his injury. All the witnesses who testified agreed that employees were not permitted to eat in the building on the date the injury occurred. Therefore, the Commission finds that defendants had no reasonable grounds for the denial of this claim and that defendants' use of a Form 61 to deny the claim was improper as there was no uncertainty concerning the compensability of plaintiff's claim.
27. All of the evidence related to this claim was readily available to defendants after the date of the injury by accident. Any reasonable investigation of this matter by defendants would have lead to the acceptance of this claim as provided by N.C. Gen. Stat. § 97-18 and Rule 601, Workers' Compensation Rules of the North Carolina Industrial Commission.
28. Defendants violated N.C. Gen. Stat. § 97-18(c) by failing to inform plaintiff of their denial of his claim until July 17, 2007, approximately 28 days after the subject incident.
29. Defendants' refusal to pay any compensation to plaintiff, including medical compensation, until approximately 148 days after the injury by accident was unreasonable and lacks any basis in law or fact. Defendants' actions thereby require the mandatory imposition of the 10% late penalty pursuant to N.C. Gen. Stat. § 97-18(g). Defendants have provided no reason to excuse in any way the non-payment within the period from June 20, 2007 through November 14, 2007.
30. The Commission finds that defendants' actions have frustrated the primary purpose of the Workers' Compensation Act, which is to provide compensation to injured *Page 10 
employees, and that defendants' continued defense of this claim was unreasonable and amounted to stubborn, unfounded litigiousness.
31. The Commission further finds that defendants' failure to file a Form 60 until November 14, 2007 violated the clear mandates of N.C. Gen. Stat. § 97-18(b) and Rule 601 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
32. OSHA performed an investigation of plaintiff's June 20, 2007 fall and cited defendant-employer for two violations of OSHA regulations, characterized as "serious." The Commission finds that the OSHA violations were the proximate cause of plaintiff's fall.
33. The OSHA citations indicated that the guardrail systems were not capable of withstanding, without failure, a force of at least 200 pounds, as required by OSHA regulations and that employees had not been properly trained regarding this regulation. Alternatively, the OSHA inspector found that the fall protection systems required by OSHA had not been followed. The citations called for immediate abatement.
34. On February 21, 2008, defendant-employer and the Department of Labor entered into a consent order before the North Carolina Occupational Safety and Health Commission in which the pending OSHA citations were settled.
35. Pursuant to the stipulated I.C. Form 22, plaintiff's average weekly wage is $531.10, which yields a compensation rate of $354.08.
36. As the result of his fall, plaintiff has been disabled from any employment and is entitled to medical compensation and total disability benefits since the date of the admittedly compensable injury by accident.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes *Page 11 
the following:
 CONCLUSIONS OF LAW
1. On June 20, 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury by accident of June 20, 2007, plaintiff is disabled from any employment and is therefore entitled to payment by defendants of total disability benefits. Plaintiff has been continuously disabled since June 20, 2007. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive all medical treatment which would tend to effect a cure or give relief from his compensable injuries. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. N.C. Gen. Stat. § 97-12 provides in part that when an employee's injury is caused by the willful failure of the employer to comply with any statutory requirement, compensation shall be increased by 10%. Plaintiff's injury in this case was caused by the willful failure of defendant-employer to comply with N.C. Gen. Stat. § 95-129(2) which requires employers to comply with occupational safety and health standards or regulations promulgated pursuant to the Federal Occupational Safety and Health Act. In this case, defendant-employer was cited for violations of 29 CFR 1926.502(b)(3) and 1926.503(a)(1). The greater weight of the evidence is sufficient to establish that the violations were "willful" within the meaning of N.C. Gen. Stat. § 97-12
in that defendant-employer's supervisors Armstrong and Jackson knowingly violated the OSHA regulations and their actions showed a "deliberate purpose not to discharge" defendant-employer's safety obligations.Beck v. Carolina Power Light Co., 57 N.C. App. 373, 383-84,291 S.E.2d 897, 903 (1982). Therefore, plaintiff is entitled to a 10% increase in the compensation awarded, as a result of defendant-employer's willful violation of OSHA safety standards. N.C. Gen. Stat. § 97-12. The Full Commission gives no weight to the settlement later *Page 12 
reached between the Department of Labor and defendant-employer, in light of the overwhelming evidence that Mr. Armstrong and Mr. Jackson improperly replaced the barriers with knowledge that their actions violated OSHA safety regulations.
5. As a direct and proximate consequence of defendants' failure to properly and timely file a Form 60, defendants failed to make compensation payments to plaintiff when due within the time required and, as a result, the mandatory imposition of the 10% late penalty is required. N.C. Gen. Stat. § 97-18(g). Therefore, plaintiff is entitled to a 10% late penalty on all total disability benefits due from June 20, 2007 through November 14, 2007, for defendants' failure to pay benefits in a timely fashion. Id.
6. Defendants have defended this claim without reasonable ground so as to demonstrate stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain Breeze Restaurant, 55 N.C. App. 663,286 S.E.2d 575 (1982).
7. Defendants failed to timely file a Form 61, in violation of N.C. Gen. Stat. § 97-18 (c) and Rules 601 and 802(2) Workers' Compensation Rules of the North Carolina Industrial Commission. The imposition of sanctions is appropriate for this violation.
8. Defendants' use of a Form 61 under the circumstances of this case was improper and therefore the imposition of sanctions is appropriate. See, Shah v. Howard Johnson, 140 N.C. App. 58, 535 S.E.2d 577 (2000),disc. review denied, 353 N.C. 381, 547 S.E.2d 17 (2001).
9. Defendants failed to properly and promptly investigate this claim as required by N.C. Gen. Stat. § 97-18(j).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Commission enters the following: *Page 13 
 A W A R D
1. Subject to the attorney's fee awarded below, defendants shall pay total disability compensation to plaintiff at the rate of $354.08 per week from June 20, 2007 and continuing until further Order of the Commission. Such amount that has already accrued shall be paid in a lump sum.
2. For defendants' violation of OSHA regulations, defendants shall pay a 10% increase in the compensation awarded plaintiff in Paragraph 1 above, which shall be paid by increasing by 10% the weekly payments due plaintiff from June 20, 2007 and continuing. This additional amount shall be included in the calculation of the attorney's fee approved below.
3. Such compensation as is presently owed and due to plaintiff under paragraphs 1 and 2 of this Award for the period from June 20, 2007 through November 14, 2007, shall be paid in a lump sum with the additional 10% late penalty imposed pursuant to N.C. Gen. Stat. § 97-18(g).
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraphs 1, 2 and 3 of this Award is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff which has accrued to date shall be paid directly to plaintiff's counsel and shall not be deducted from the compensation due plaintiff, but shall be assessed and paid by defendants as part of the costs of this action. N.C. Gen. Stat. § 97-88.1.
5. After defendants' satisfaction of the payments due plaintiff and plaintiff's attorney under paragraphs 1, 2 and 3 of this Award, then plaintiff's attorney shall receive every fourth check of all future compensation due under this Award.
6. Defendants are fined $2,000.00 for their failure to timely file a Form 61 and for their improper use of the Form 61. This amount shall be paid to the Industrial Commission. *Page 14 
7. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries for as long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability.
8. Defendants shall pay the costs.
This 18th day of December, 2008.
 S/_____________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
 CONCURRING: S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ DANNY LEE McDONALD COMMISSIONER *Page 1