***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission affirms the Opinion and Award of Deputy Commissioner Hall with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter of this action. *Page 2 
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. On July 25, 2007, the date of the injury, this cause was subject to the North Carolina Workers' Compensation Act.
4. That on said date, an employment relationship existed between the employee and employer, Commercial Metals Company.
5. The employer is insured by ACE, USA.
6. Plaintiff's injury, which is the subject of this cause, is head, shoulder, and elbow injury.
7. Plaintiff's average weekly wage at the time of the injury is subject to a Form 22 verification.
 ***********
The following were marked and received into evidence as:
 EXHIBITS 1. Stipulated Exhibit 1-Medical records.
 2. Stipulated Exhibit 2-Discovery responses.
 3. Stipulated Exhibit 3-I.C. forms and motions.
 4. Defendant's Exhibit 1-Photos of labels and file cabinet.
 5. Defendant's Exhibit 2-Photos related to stakes and washers job.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows: *Page 3 
 FINDINGS OF FACT
1. On August 2, 2007, Plaintiff worked for Defendant-Employer as a truck driver. Plaintiff was assisting a crane operator in landing bundles of rebar onto his truck bed when the knot on a rope he was pulling slipped, causing him to step back and fall off the trailer. Plaintiff sustained injuries to his head, shoulder, and elbow as a result of the fall.
2. Plaintiff treated with Dr. Charlton Owensby of Caromont Occupational Medicine on August 2, 2007. Dr. Owensby diagnosed Plaintiff with a contusion of the elbow, an abrasion to the elbow, and a cervical strain. Plaintiff was assigned restrictions of lifting 10 pounds, little use of the right arm, and no use of the right arm above shoulder height.
3. Plaintiff returned to work for Defendant-Employer in a light duty office position and was permitted to sit or stand as needed.
4. On August 9, 2007, Plaintiff treated with Stephanie Johnson, N.P. at Caromont Occupational Medicine. On this date, Plaintiff was reluctant to perform any of the physical examinations administered by Ms. Johnson. Ms. Johnson diagnosed Plaintiff with a cervical strain and right shoulder strain, and said Plaintiff could return to sedentary work.
5. On August 10, 2007, Plaintiff left Defendant-Employer's plant after telling Mr. Emerson that he could not perform the light duty job anymore. Plaintiff did not return to work for Defendant-Employer or call to indicate when he would be returning.
6. Plaintiff thereafter underwent a shoulder and cervical MRI. Plaintiff's neck MRI was "essentially normal." Plaintiff's right shoulder MRI showed tendinitis involving the supraspinatus tendon only.
7. Plaintiff treated with his primary care physician, Dr. James Neal, on August 31, 2007. On this date, Dr. Neal performed no physical examination of Plaintiff's cervical spine. *Page 4 
8. On September 5, 2007, Plaintiff was reluctant to perform any physical examination and Dr. Owensby felt that Plaintiff's reluctance to perform the physical examinations suggested symptom magnification. Dr. Owensby testified that Plaintiff appeared to be "going backwards" even though people usually improve over time.
9. Dr. Owensby assigned sedentary work restrictions including a 10 pound lifting restriction and no use of the right arm. Dr. Owensby referred Plaintiff to an orthopedist "[b]ecause the patient's symptoms do not correlate with the MRI findings and apparently he is stating that he is having worse symptoms than the MRI shows."
10. Plaintiff was seen by orthopedist Dr. Clayton Thomason on October 12, 2007. Dr. Thomason felt that Plaintiff's "subjective complaints are certainly difficult to interpret and really not consistent with the relatively benign diagnostic studies that have been obtained."
11. Plaintiff returned to Dr. Neal on October 18, 2007. Dr. Neal diagnosed Plaintiff with anxiety on this date. Dr. Neal testified that he did not know what was happening to Plaintiff, but continued to write him out of work.
12. On November 12, 2007, Plaintiff admitted to moderately severe depression, stress, and sadness related to the death of a family member, being out of work, and mounting debt. Dr. Neal had no opinion as to the cause of Plaintiff's shoulder, neck, or back pain, yet he continued to write Plaintiff out of work.
13. Plaintiff had been treating for depression prior to his August 2, 2007 injury. Dr. Neal's medical note from October 24, 2003 indicates Plaintiff had been depressed for six months and was prescribed Effexor. Dr. Neal's medical note from April 20, 2007 indicates Plaintiff was seen for pain and that his current medications were Lorazepam, Darvocet, Ambien, and Hyoscyamine. *Page 5 
14. On December 3, 2007, Plaintiff complained of pain from head to toe, which Dr. Neal testified he sees in many depressed patients. Dr. Neal again had no diagnosis for Plaintiff, yet continued to write him out of work.
15. Plaintiff was seen by Dr. David DuPuy for an Independent Medical Evaluation on April 4, 2008. Dr. DuPuy felt that Plaintiff had significant exaggerated pain behavior and symptom magnification. Dr. DuPuy did not find anything from an objective standpoint keeping Plaintiff from working.
16. During the April 4, 2008 visit, Plaintiff admitted to Dr. DuPuy that the Hydrocodone does not help him much.
17. Dr. DuPuy determined that Plaintiff reached maximum medical improvement with no evidence of impairment and no specific restrictions. Dr. DuPuy also noted that Plaintiff should be able to return to work as a truck driver.
18. On May 1, 2008, Plaintiff returned to Dr. Neal with complaints of swelling in his forearms, hands, and his fingers. Dr. Neal saw no way that this set of problems could be related to Plaintiff's August 2, 2007 injury and seemed to be entirely new. Dr. Neal still does not have any explanation for Plaintiff's symptoms on that date.
19. Dr. DuPuy does not believe that the incident of August 2, 2007 would result in the pain is he now complaining of and is of the opinion that Plaintiff should have been over the sprain and strain by the first of October, "giving him the full benefit of the doubt."
20. According to Dr. DuPuy, Plaintiff's subjective complaints of pain are not substantiated by any findings of neuromuscular damage.
21. Dr. DuPuy testified that he is concerned about the level of Hydrocodone that Plaintiff is taking, given that Plaintiff is also taking Ambien, Lexapro, and Lorazepam. Dr. *Page 6 
DuPuy explained that when an individual has anxiety and depression, he will often confuse the stress with pain.
22. Dr. Thomason testified that he has no reason to disagree with Dr. DuPuy and agreed that Plaintiff has no specific restrictions.
23. Dr. Thomason testified that he would expect Plaintiff to be back to normal 10 months out from the incident and that he typically would not keep someone out of work for 10 months based on subjective complaints alone.
24. Dr. Neal does not have opinion on whether Plaintiff's inability to return to work is related to the August 2, 2007 injury where he fell off the truck.
25. Dr. Neal further testified that, because there is no definitely confirmed diagnosis for Plaintiff, he has no idea as to whether Plaintiff is going to improve.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident on August 2, 2007 when he fell from the trailer onto the street and injured his head, shoulder, and elbow. N.C. Gen. Stat. § 97-2.
2. N.C. Gen. Stat. § 97-2(9) defines disability as the incapacity, because of an injury, to earn the wages which the employee was receiving at the time of the injury. In order to receive compensation, an employee must establish that his injury caused disability. Anderson v.Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951).
3. In order to meet his burden of proving disability, Plaintiff must produce (1) medical evidence that he is incapable, as a consequence of the work related injury, of work in any employment; (2) evidence that he is capable of some work, but that after a reasonable effort *Page 7 
on his part, has been unsuccessful in his effort to find employment; (3) evidence that he is capable of some work, but that it would be futile because of pre-existing conditions; or (4) the production of evidence that he has obtained employment at a lesser wage due to his injury.Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
4. Based upon the above findings of fact, Plaintiff has failed to show that he is incapable of working as a result of his compensable injury. The testimony of Drs. DuPuy and Thomason support the conclusion that Plaintiff is capable of returning to his former job for Defendant-Employer as of April 14, 2008. The undersigned give little weight to the testimony of Dr. Neal, who has had no explanation for Plaintiff's symptoms, yet has continued to prescribe Plaintiff a heavy narcotic in addition to anti-depressants.
5. Pursuant to N.C. Gen. Stat. § 97-32, if an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified. Thus, even if the employee can prove partial disability, however, he is barred from receiving any compensation where he unjustifiably refuses suitable employment. Shah v. Howard Johnson,140 N.C. App. 58, 70-71, 535 S.E.2d 577, 585 (2000). The compensation will cease on the date the offer of suitable employment is made and rejected.Id.
6. Plaintiff was given light-duty restrictions on August 2, 2007, which were accommodated by Defendant-Employer with suitable employment. As Plaintiff unjustifiably refused suitable employment when he walked out of Defendant-Employer's plant on August 10, 2007, plaintiff is not entitled to further disability benefits beginning on August 11, 2007 until such refusal ceases. N.C. Gen. Stat. § 97-32.
 *********** *Page 8 
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's disability benefits are hereby terminated beginning August 11, 2007 until such time as plaintiff's unjustifiable refusal of suitable employment ceases
2. Each side shall bear its own costs.
This the 1st day of June 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1