***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Taylor with minor modifications.
 ***********
Plaintiff's November 4, 2008 motion to admit additional evidence from an FCE performed on September 8, 2008 is hereby DENIED.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and subject matter.
2. Employee is Carolyn Tuggles.
3. Employer is Blue Ridge Healthcare Center.
4. The carrier on the risk at the time of the alleged injuries was American Zurich Insurance Company.
5. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between plaintiff and defendant on April 25, 2006, the date of injury.
6. Plaintiff's claim was accepted as compensable.
7. Plaintiff's average weekly wage is $447.51.
8. Plaintiff has not worked for defendant-employer since February 27, 2007.
9. The parties stipulated into evidence, as Stipulated Exhibit 1, a packet of materials including plaintiff's medical records, Nurse Case Manager Reports, Industrial Commission Forms, November 30, 2007 Order from Executive Secretary Weaver, Job Search Logs, plaintiff's personnel file and wage records, and plaintiff's motions and defendants' responses to same regarding plaintiff's request to have Dr. Derian designated as plaintiff's treating physician.
10. Following the hearing before the deputy commissioner, Stipulated Exhibit 2, supplemental medical records were received into evidence.
11. The following are the issues for decision: (1) whether plaintiff is entitled to temporary total disability compensation from February 27, 2007 to the present and continuing; and (2) whether Dr. Derian should be designated as plaintiff's treating physician. *Page 3 
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 54 year old female. Plaintiff worked as a CNA with defendant from 1993 through February 2007. On April 25, 2006, plaintiff was employed by defendant as a certified nurses' assistant ("CNA"). While at work that day, plaintiff slipped on the floor at defendant's facility and landed on her back. Defendants ultimately accepted plaintiff's claim as compensable.
2. Following the fall, plaintiff treated with the emergency department at Rex Healthcare where she was diagnosed as having sustained contusions and a muscle strain to the neck and back.
3. On April 27, 2006, plaintiff treated with Dr. Bennett at Doctor's Urgent Care where she complained of low back pain, shoulder pain, neck pain, and left rib pain. Dr. Bennett assigned plaintiff work restrictions which included that she not lift more than ten pounds, as well as restrictions for limited standing and walking.
4. The work restrictions assigned by Dr. Bennett remained in place until plaintiff was seen by Dr. Mikles at Raleigh Orthopaedic Clinic on May 22, 2006. At that time, plaintiff complained of neck, back, and arm pain. After examining plaintiff, Dr. Mikles assigned plaintiff light duty work restrictions with instructions that she not lift greater than 20 pounds and that she not engage in overhead activities.
5. Plaintiff returned to work for defendant the day after the fall earning the same wages she was earning prior to the April 25, 2006 incident. Plaintiff's position was supervised *Page 4 
by Fran Jackson, a registered nurse. At that time, plaintiff worked performing light duty tasks including taking vital signs, taking blood pressure, delivering ice and nourishment to patients, and answering patients' call lights. Plaintiff was able to perform several of her duties while sitting down including recording vital signs, checking patients' temperatures and pulses, and checking their blood pressure. Several of her co-workers, including those who were not on any work restrictions, also performed the aforementioned duties for defendant.
6. On August 7, 2006, plaintiff underwent a functional capacity evaluation (FCE), which indicated she could work in the medium duty capacity exerting 20 to 50 pounds of force occasionally, 10 to 25 pounds of force frequently, and up to 10 pounds of force constantly. Additionally, the functional capacity evaluation indicated that plaintiff could perform medium duty work for an 8 hour work day.
7. On September 18, 2006, plaintiff sought follow-up treatment with Dr. Mikles. Dr. Mikles examined plaintiff and determined that she had reached maximum medical improvement. He assigned plaintiff a 5% rating to her back and released plaintiff to return to work with the restrictions outlined in the FCE performed on August 17, 2006. Dr. Mikles indicated that he would not recommend surgical intervention for plaintiff.
8. On November 21, 2006, plaintiff received a notice of disciplinary action form from defendant, which she reviewed and signed. The notice informed plaintiff that she had been late to work four times in one pay period including on November 7, November 11, November 12 and November 13, 2006. The disciplinary notice also informed plaintiff that the notice constituted her final warning.
9. On February 5, 2007, Dr. Mikles reviewed a copy of the job description outlining the tasks being performed by plaintiff for defendant, which were in accordance with his *Page 5 
previously imposed work restrictions. Dr. Mikles confirmed that plaintiff was capable of performing the duties outlined on the job description.
10. On February 27, 2007, plaintiff received another notice of disciplinary action form notifying her that she had been late to work 25 times since November 21, 2006, and that she had been absent from work six times since November 21, 2006. As a result of her tardiness and absences, plaintiff was notified that her employment was terminated effective February 27, 2007.
11. Pursuant to defendant's attendance policies, any other employee, regardless of disability, would have been terminated under the same circumstances as those involved in plaintiff's termination. Plaintiff's termination was not related to her April 25, 2006 injury.
12. On April 5, 2007, plaintiff was seen by Dr. Craig Derian for a second opinion on her impairment rating. Dr. Derian agreed with the 5% rating previously assigned to plaintiff's back by Dr. Mikles. On April 5, 2007, Dr. Derian did not believe plaintiff was a surgical candidate. In an addendum to the April 5, 2007 record, Dr. Derian noted, however, that he did not believe plaintiff would improve without surgical intervention consisting of a lumbar decompression, stabilization, and spinal fusion.
13. On February 7, 2008, plaintiff treated with Dr. William Lestini for a second opinion on her surgical options. Dr. Lestini reviewed a MRI previously performed on plaintiff's lumbar spine. Dr. Lestini discussed plaintiff's treatment options with her which included conservative and surgical options, but no definitive decision was made regarding plaintiff's future course of treatment.
14. On April 18, 2008, a discogram was performed to identify specific pain generators and to determine plaintiff's surgical options. Following the discogram, plaintiff *Page 6 
returned to Dr. Lestini on May 20, 2008. Given the results of the discogram, Dr. Lestini advised against surgical intervention. Plaintiff agreed with Dr. Lestini's recommendation. Dr. Lestini and plaintiff agreed that conservative treatment including weight loss and strengthening and conditioning exercises would be in plaintiff's best interest. Dr. Lestini recommended that plaintiff be placed in a physical therapy regimen for aerobic conditioning two to three times per week for four to six weeks with the Back Builder program.
15. Following the May 20, 2008 appointment with Dr. Lestini, plaintiff's counsel informed counsel for defendants that plaintiff did not want to proceed with the surgery recommended by Dr. Derian. Plaintiff's counsel advised that plaintiff wanted to treat her condition conservatively with Dr. Lestini.
16. Dr. Lestini indicated that plaintiff should remain out of work while enrolled in the Back Builder program. Plaintiff enrolled in the Back Builder program on May 29, 2008.
17. After completion of the Back Builder program, Dr. Lestini ordered plaintiff to begin a three month gym-based program to continue with conditioning and strengthening exercises. During the three month gym-based program, plaintiff was instructed that she could work in a light duty position with no lifting over 20 pounds, including in a position like the one in which she was working for defendant at the time of her termination. Plaintiff's alleged inability to find employment is not related to the April 25, 2006 incident.
18. Plaintiff bears a substantial risk of requiring future medical treatment for her compensable back condition.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 7 
1. On August 25, 2006, plaintiff suffered an admittedly compensable injury by accident resulting in injury to her back.
2. Plaintiff's motion seeking to have Dr. Derian designated as her treating physician has been abandoned and is denied as moot. N.C. Gen. Stat. § 97-25 (2007).
3. On February 27, 2007 when plaintiff was terminated, she was working in a position for defendant that constituted suitable employment. N.C. Gen. Stat. § 97-32 (2007); Shah v. Howard Johnson, 140 N.C. App. 58,71, 538 S.E.2d 577, 585 (2000).
4. On February 27, 2007, plaintiff's employment position was terminated due to her misconduct. A non-injured employee would have been terminated under the same circumstances. Plaintiff's termination was not related to her compensable injury. Seagraves v. Austin Co., 123 N.C. App. 228,472 S.E.2d 397 (1996).
5. Plaintiff's termination for misconduct constituted a constructive refusal to work in violation of N.C. Gen. Stat. § 97-32 (2007); Seagravesv. Austin Co., 123 N.C. App. 228, 472 S.E.2d 397 (1996).
6. Plaintiff's alleged inability to find suitable employment is not related to her compensable injury. Seagraves v. Austin Co.,123 N.C. App. 228, 472 S.E.2d 397 (1996).
7. Plaintiff is not entitled to temporary total disability from February 27, 2007 through May 29, 2008, the date she was taken out of work to enroll in the Back Builders program.
8. Plaintiff bears a substantial risk of requiring future medical treatment for her compensable back condition.
 *********** *Page 8 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's request to have Dr. Derian designated as her treating physician is moot and is, therefore, DENIED.
2. Plaintiff's claim for temporary total disability compensation from February 27, 2007 through May 28, 2008 is DENIED.
3. Defendants shall pay Plaintiff temporary total disability from May 29, 2008, through the date of completion of the Back Builders program.
4. Plaintiff is entitled to have defendants provide past and future medical treatment for her compensable back condition.
5. Defendants shall pay the costs.
This the __ day of April 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ STACI T. MEYER *Page 9 
COMMISSIONER *Page 1