***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission MODIFIES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of plaintiff's injury.
4. An employer/employee relationship existed between the parties at the time of the employee's injury.
5. The employer in this case is Wal-Mart, and the carrier on the risk is American Home Assurance with Claims Management, Inc. as claims administrator.
6. Plaintiff sustained an admittedly compensable injury to his back on or about July 22, 2006.
7. Plaintiff's average weekly wage is $819.23, which yields a compensation rate of $546.18.
8. Plaintiff is currently still employed with defendant-employer.
9. The following documents were accepted into evidence as stipulated exhibits:
 a. Exhibit 1: Executed Pre-Trial Agreement
 b. Exhibit 2: Industrial Commission forms
 c. Exhibit 3: Plaintiff's medical records
 d. Exhibit 4: Parties' discovery responses
10. Transcripts of the depositions of Dr. George V. Huffmon, III, Dr. James Maultsby and Dr. Adam P. Brown are a part of the evidence of record. *Page 3 
11. The issues before the Commission are whether plaintiff is currently being provided suitable employment by defendant-employer and to what compensation is plaintiff entitled.
 *********** EVIDENTIARY RULING
On August 27, 2008, over three months after the hearing, defendants moved Deputy Commissioner Harris to accept into evidence a letter from defendants' counsel to plaintiff's counsel, dated that day, conditionally offering plaintiff the position of "overnight cashier" in defendant-employer's Shallotte, North Carolina store. The tender included a job description for the "overnight cashier" position. The letter did not offer plaintiff the position outright, but stated that a "requisition" was being opened for the position whereby plaintiff would be "considered" for the position. Plaintiff objected to the admission of the letter and job description into evidence. Given that the letter, by its own terms, is not a job offer, and also given that the tender was late, without plaintiff having the opportunity to elicit testimony at hearing about the position, defendants' motion is hereby DENIED.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing before the Deputy Commissioner, plaintiff was 43 years old, with a date of birth of January 3, 1966. He earned his GED and has no other formal education. Prior to working with defendant-employer, plaintiff was self-employed in floor work and cleaning businesses, and he had also installed tile and flooring. *Page 4 
2. Plaintiff began working with defendant-employer in June of 2000 as a floor crew supervisor. As of the hearing before the Deputy Commissioner, plaintiff continued to work with defendant-employer as a maintenance worker.
3. Plaintiff sustained an admittedly compensable back injury on July 3, 2004. As a result of this injury, plaintiff sustained low back and left leg pain. This injury was the subject of another workers' compensation claim, I.C. No. 497451.
4. A lumbar MRI done on July 28, 2004 showed that plaintiff had a large left paracentral disc herniation at L5-S1.
5. In or about December of 2004, plaintiff returned to work with defendant-employer after being out since his July 3, 2004 injury. Upon plaintiff's return, because his old job had been filled, defendant-employer put him to work on the floor crew.
6. Plaintiff's job duties on the floor crew primarily involved, and continue to involve, buffing, scrubbing, stripping and waxing floors. The physical requirements of the position include, but are not limited to: maneuvering buffing and scrubbing machines that are self-propelled and weigh from 200 to 250 pounds, lifting propane tanks that are used to power the machines and that weigh over 50 pounds apiece, and bending and kneeling frequently.
7. Defendant-employer has a policy in place that employees are to get assistance whenever moving any object that weighs more than 50 pounds, but, as plaintiff testified, sometimes there is not anyone else around to help.
8. Anthony Marlow, plaintiff's supervisor, agreed with plaintiff's description of his job duties. He also confirmed that plaintiff's restrictions were not being accommodated in the floor crew position. *Page 5 
9. Defendants submitted a job description for plaintiff's position, entitled "maintenance associate." The description includes the following essential functions: "reaching . . . below knee level and bending, twisting, or stooping"; "constantly lifting, sorting, carrying, and placing merchandise and supplies of varying sizes weighing up to 50 pounds without assistance, and regularly lifting and pushing over 50 pounds with team lifting"; and "constantly utilizing power equipment, such as a floor buffer, pallet jack, and burnisher".
10. Dr. George Huffmon, a neurosurgeon, was plaintiff's treating physician for the July 3, 2004 injury. On April 7, 2005, he imposed permanent restrictions, related to said injury, of no excessive bending or stooping and no lifting over 40 pounds. Dr. Huffmon also noted that plaintiff would continue to have intermittent low back pain. Although Dr. Huffmon did not believe that plaintiff needed surgery at that time, he noted that plaintiff might need it "later in life."
11. On July 22, 2006, plaintiff injured his low back while trying to move a stack base that weighed over 100 pounds. He immediately experienced low back pain and pain down his right leg.
12. Plaintiff began treating for this second injury with Dr. James Maultsby's office, which was the provider designated by defendants. On July 22, 2006, Dr. Maultsby's nurse practitioner assessed plaintiff with low back pain with radiation and restricted him to no lifting over five pounds. On July 26, 2006, Dr. Maultsby assessed plaintiff with degenerative joint disease at L5-S1 and a lumbosacral strain and restricted him to limited stooping and bending and no lifting over 10 pounds.
13. Over the next several months, Dr. Maultsby's office gradually lifted the restrictions on plaintiff, and plaintiff gradually worked more hours. *Page 6 
14. Plaintiff did miss some work and was paid temporary total disability compensation by defendants following his July 22, 2006 injury.
15. A lumbar MRI on July 31, 2006 showed a small central disc herniation at L5-S1 with no nerve root compression.
16. Plaintiff went back to Dr. Huffmon on October 5, 2006, complaining of low back pain radiating down his right leg. Dr. Huffmon assessed plaintiff with sacroiliitis and referred him for an injection and chiropractic treatment.
17. On November 22, 2006, Dr. Maultsby wrote that he had reviewed a job description provided by defendant-employer for plaintiff's position, and it showed that "the buffing etc. is done using equipment that places no stress on the back." On that basis, Dr. Maultsby lifted an earlier order whereby he had restricted plaintiff from doing any buffing or mopping. Dr. Maultsby also noted on November 22, 2006 that plaintiff could work a full shift of eight to 12 hours.
18. On December 13, 2006, plaintiff reported to Dr. Maultsby that he was having trouble physically doing his regular job because of his back pain. Dr. Maultsby suggested that they have a conference with defendants' representatives in order to determine whether further treatment was indicated.
19. Plaintiff saw Dr. Maultsby for the last time on January 10, 2007. That day, plaintiff reported that he was better and working his regular shift. Dr. Maultsby attributed any remaining problems to conditions that existed before plaintiff's July 22, 2006 injury, including rheumatoid arthritis, and he released plaintiff from his care.
20. On July 5, 2007, plaintiff presented to Dr. Adam Brown, a neurosurgeon, for a second opinion evaluation on his permanent partial disability rating. Dr. Brown noted that *Page 7 
plaintiff was still showing low back and right leg symptoms, and he opined that they "are probably exacerbated by his current job." Dr. Brown further noted that "He would probably be better off in a management or desk type position than he is now and I would suggest this if possible."
21. As of the hearing before the Deputy Commissioner, defendant-employer had not offered plaintiff any other job, and he continued working on the floor crew.
22. Plaintiff continued to have low back pain at work, with pain shooting down both legs. He was taking Oxycontin to try to control his pain.
23. Dr. Maultsby is an orthopedic surgeon by training, although he has not performed surgery for years. As he testified, when he was in the process of releasing plaintiff back to full-duty work in November and December of 2006, he had wanted to confer with plaintiff and defendant-employer together to determine exactly what the physical requirements of plaintiff's job were, because "(plaintiff) was telling me one thing, his employer was telling me something else." Dr. Maultsby did not recall seeing the written "maintenance associate" job description produced by defendants at the hearing.
24. Dr. Maultsby discussed plaintiff's job with defendant-employer's representative out of plaintiff's presence, and the only topic they discussed was whether plaintiff rode on the buffing machine or pushed it. Based on his discussion with the representative, when he issued the full-duty release, Dr. Maultsby was under the impression that plaintiff rode on the machine and simply steered it. Dr. Maultsby did not know what plaintiff's other job duties were.
25. Dr. Maultsby further testified that his release of plaintiff to return to work was "as tolerated." Dr. Maultsby felt that plaintiff could "modify on his own" his activities so as not to bother his back. *Page 8 
26. Dr. Huffmon testified that the work restrictions of no excessive bending or stooping and no lifting over 40 pounds that he imposed on plaintiff on April 7, 2005 were permanent, unless and until a physician treating plaintiff for his July 3, 2004 injury modified it. Dr. Huffmon further testified that he would have kept these restrictions in place following the July 22, 2006 injury. While Dr. Huffmon would defer to Dr. Maultsby for whatever restrictions were necessary related to the July 22, 2006 injury itself, those restrictions do not supercede the restrictions that he placed on plaintiff on April 7, 2005.
27. Dr. Brown suggested that plaintiff find a lighter line of work, based on both the 2004 and 2006 injuries.
28. Based upon the greater weight of the competent medical evidence, the Full Commission finds that the floor crew position is not suitable employment. Due to his permanent restrictions of no excessive bending or stooping and no lifting over 40 pounds, to perform his job duties plaintiff requires special assistance and accommodations which have not been provided on a regular basis by defendant-employer. Further, the Commission finds that the floor crew position requires physical activities that exceed the permanent restrictions assessed by Dr. Huffmon. All three physicians, Drs. Maultsby, Huffmon and Brown, agreed that working outside Dr. Huffmon's restrictions and/or doing heavy duty work would worsen plaintiff's pain.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. N.C. Gen. Stat. § 97-32 provides: "If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." The plain language of this statute requires that the proffered employment is suitable to the employee's capacity. McLean v.Eaton Corp., 125 N.C. App. 391, 281 S.E.2d 489 (1997). Suitable employment is defined as "any job that a claimant `is capable of performing considering his age, education, physical limitations, vocational skills and experience.'" Shah v. Howard Johnson,140 N.C. App. 58, 68, 535 S.E.2d 577, 583 (2000), disc. reviewdenied, 353 N.C. 381, 547 S.E.2d 17 (2001). Plaintiff has established that the position offered by defendant-employer and which plaintiff is currently working is not suitable employment because it involves job duties that do not comport with the restrictions imposed on plaintiff for his compensable low back condition. McLean v. Eaton Corp., supra.
3. Disability, within the North Carolina Workers' Compensation Act, means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment. N.C. Gen. Stat. § 97-2(9). In order to obtain compensation, plaintiff has the burden of proving the existence and extent of his disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). In order to support a conclusion of disability, the Commission must find (1) that plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment, and (3) that plaintiff's incapacity to earn was caused by his injury. Id. *Page 10 
4. In the case at hand, as plaintiff has continued to work for defendant-employer earning his pre-injury wages, at a position that has now been determined to be unsuitable, plaintiff has failed to prove disability at this time. Hilliard v. Apex Cabinet Co., supra.
5. Plaintiff is entitled to have defendants provide further medical treatment for his compensable low back condition. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident. Dr. Huffmon is hereby designated as plaintiff's treating physician, and defendants shall authorize and pay for the treatment that Dr. Huffmon recommends for plaintiff's compensable low back condition, including, but not limited to, diagnostic testing, surgery, physical therapy, prescriptions, referrals and mileage.
2. Defendants shall pay the costs. As part of their costs, if they have not done so already, defendants shall pay the expert witness fees to Drs. Huffmon, Maultsby and Brown previously approved by the Deputy Commissioner.
This the 29th day of June, 2009. S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING: *Page 11 
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1